[Crim. No. 1400. First Appellate District, Division One.—December 2, 1927.]

THE PEOPLE, Respondent, v. JULIUS M. BLUMEN et al., Appellants.

Joseph A. Brown for Appellants.

U. S. Webb, Attorney-General, and John L. Flynn and James S. Howie, Deputies Attorney-General, for Respondent.

KNIGHT, J.—Appellants pleaded guilty to a charge of grand larceny and applied for probation, but before their applications were heard moved the court for leave to withdraw said pleas, and the motion was denied. An appeal was then taken from the order denying said motion and from the judgment of conviction.

The rule is well established that the granting or denying of permission to withdraw a plea of guilty and to substitute a plea of not guilty is a matter within the sound discretion of the trial court, and that its action must be sustained unless an abuse of discretion clearly appears. (*People* v. *Manriquez,* 188 Cal. 602 [20 A. L. R. 1441, 206 Pac. 63].) The circumstances shown by the record in sup-

port of the trial court's decision denying said motion may be stated as follows: Appellants are brothers. One of them had been employed in the foreign exchange department of a San Francisco bank. In February, 1926, they were indicted for the theft and embezzlement of the bank's securities, consisting of foreign national bonds, approximating in value $100,000. Three separate indictments were returned against them. One contained three counts, charging them jointly with grand larceny, and the other two charged them singly, one with grand larceny and the other with embezzlement. At the time the indictments were found appellants were fugitives, but later were apprehended in London, England, and, pursuant to extradition proceedings, were returned to San Francisco for trial. They appeared in court with counsel for arraignment on August 13, 1926, and were given until August 23d to plead. Demurrers on general and special grounds were thereafter interposed and over-ruled; and on October 20th pleas of not guilty were entered to each charge. On November 29th the causes came on for trial, at which time appellants, being represented by counsel, asked and were granted permission to withdraw their pleas of not guilty to the charge set forth in the second count of the joint indictment, and thereupon entered pleas of guilty thereto; whereupon and on motion of the district attorney the court dismissed the charges set forth in the first and third counts, and the two remaining indictments. On December 3d, which was the date set for the pronouncement of judgment, appellants applied for probation. The hearing of their applications was continued until January 3, 1927. At that time appellants filed a motion for leave to withdraw their pleas of guilty and their applications for probation and to vacate the order dismissing the other charges. After a full hearing, during which much oral and documentary proof was received, appellants' motion was on February 5, 1927, denied, and their applications for probation were continued for hearing until March 12th, at which time said applications were also denied. Thereupon the court pronounced judgment, the sentence being imprisonment in the state prison.

At the commencement of the hearing of the motion counsel for appellants conceded in behalf of appellants (neither having testified at said hearing) that they understood the serious

nature of the charge when they pleaded guilty thereto, and that they were mentally competent and fully realized the nature and effect of such pleas. At the time the motion was filed, however, appellants also filed a verified petition setting forth certain alleged facts in support of the motion, and it was therein alleged that they were led to believe by statements made to them on the morning the trial was to have commenced, by one of the attorneys then representing them, and by statements previously made to them "by various other persons," that irrespective of the question of their guilt they would be granted probation if they would plead guilty to one of the charges against them; that they "did not intend to plead guilty to any charge except for the beliefs induced in their minds that thereby and thereupon . . . they would receive prompt and definite probation and be freed of all further incarceration and difficulty for and in connection with any of the matters involved in any of the counts in said indictments''; but that since the making of said application for probation "it has developed that interested persons are opposing such application contrary to the belief induced in their minds and the assurances given them." Appellants' present counsel stated in reply to an inquiry made by the court that the "various other persons" referred to by appellants in their verified petition were Detective Proll of the San Francisco police department and one MacCubbin, a special investigator for the insurance carrier for the bank, both having served as agents for the state of California to bring appellants back from London to San Francisco; afterward the names of certain officers of the surety company were added to those mentioned.

All of the persons mentioned, however, including appellants' former attorney, unqualifiedly denied ever having intimated to appellants or to either of them that they would be granted probation under any conditions. Said attorney declared that the suggestion that they plead guilty originated entirely with appellants and not with him; that when they first mentioned it he was opposed to their doing so, and that they were repeatedly advised by him that if they did plead guilty the matter of granting or refusing probation rested wholly with the court. Detective Proll testified that although in response to the various inquiries made by appellants on the return trip to San Francisco he endeavored

to explain the legal procedure necessary to be followed in applying for probation, he had never intimated that it was possible for them to obtain probation; MacCubbin testified substantially to the same effect, stating that he had made no statements whatever to appellants encouraging them to plead guilty, nor did he intimate that they would be released on probation if they did so plead; and the officers of the surety company filed affidavits likewise denying having made any such promises.

Appellants further averred in their verified petition that on the day their trial was to have commenced Leopold Blumen, as a result of jail confinement, "was sick and ill and has been continuously sick and ill and he was nervous and mentally and physically disturbed and unfit to make any determination, . . . that J. M. Blumen was also sick and mentally and physically distressed and particularly worried and concerned over his brother's illness . . . " But it is evident from the shrewd manner in which the crimes were planned and executed, and the cleverness shown by appellants during their flight across America and through Europe in eluding the arresting officers and disposing of the stolen securities that they are persons of keen intelligence; and, therefore, it may be fairly inferred that the condition of mind above described in which they claimed to have found themselves after being arrested and returned to San Francisco for trial was nothing more serious than would be expected to result naturally from a realization of the grave consequences with which they were confronted after having committed a theft involving $100,000 worth of property.

Furthermore, in view of the evidence adduced at the hearing, the trial court was fully justified in believing that there was no reasonable doubt of appellants' guilt. So far as the record shows they did not deny the theft of the bonds, the only defense suggested by their counsel at the hearing being obviously a technical one. The evidence with respect to appellants' guilt shows that soon after Detective Proll arrived in London and after appellants had exhausted their remedies in the British courts to avoid extradition, appellants freely confessed their guilt, stating the details of how and where they had sold or otherwise disposed of the stolen bonds, some being converted in San Francisco,

others in eastern states, in Canada, England and on the continent; and the remainder, or the proceeds derived from the sale of them, being deposited by them in certain banks in Zurich and elsewhere. They also declared their intention to make restitution as far as possible, and in furtherance of such intention wrote letters authorizing the San Francisco bank's representative to take control of certain bank accounts standing in their names. Thereafter, on the return voyage across the Atlantic, appellants reduced their confessions to written form, setting forth in the beginning and at the conclusion thereof that the same were freely and voluntarily made. So far as the record discloses the truth of the statements made in these various confessions has never been denied.

The foregoing facts prove without dispute that when appellants entered their pleas of guilty they were neither laboring under mistake nor misunderstanding as to the effect of such pleas, nor under any misconception as to the nature of the charge; and they also fairly support the inference that said pleas were interposed for the purpose of speculating upon a chance of gaining probation; and that when the hope or expectation thereof appeared to be futile they sought to escape a term of imprisonment by withdrawing their pleas and standing trial before a jury on a technical defense. Under such circumstances it would seem to require no discussion to demonstrate that there is an entire lack of grounds upon which this court could justify a declaration that the trial court abused its discretion in denying appellants' motion. (*People* v. *Manriquez, supra; People* v. *Breshi,* 44 Cal. App. 307 [186 Pac. 361]; *People* v. *Brown,* 38 Cal. App. 46 [175 Pac. 85]; *People* v. *Junod,* 85 Cal. App. 194 [259 Pac. 101].) As said in *People* v. *Manriquez, supra,* "The fact that a defendant, knowing his rights and the consequences of his act, hoped or believed, or was led by his counsel, or others, to hope or believe that he would receive a milder punishment by pleading guilty than that which would fall to his lot after trial and conviction by a jury, presents no ground for the exercise of the discretion necessary to permit a plea of guilty to be withdrawn."

It is doubtless true that where, as in the case of *People* v. *Schwartz,* 201 Cal. 309 [257 Pac. 71], it appears without

conflict that a defendant has been induced to plead guilty by promises of immunity made directly to him by officials who are charged with the enforcement of the law, such as an authorized member of the grand jury and representatives of the district attorney's office, the trial court upon learning of such promises should allow the defendant to withdraw his plea and stand trial when it appears that such promises cannot be fulfilled. But there are no such circumstances here. Appellants admit that the representatives of the district attorney's office made no promises whatever and all of the other persons mentioned by appellants as having indicated the granting of probation have denied having done so. Even though, as appellants claim, the officials of the surety company had intimated that they would not oppose probation, such attitude on their part would not be controlling upon officials charged with the administration of the criminal laws.

█ Appellants contend in support of their appeal from the judgment that the second count was demurrable upon the ground that the stolen property was not described with sufficient certainty. We find no merit in the point. The property was described as "ten (10) Norsk 5½% Stats. Loan 1918 bonds of the value of $21,000 in gold coin of the United States of America." The code provides that in an indictment for the larceny of valuable securities it is sufficient if it be alleged and proved that the subject of the larceny was valuable securities without specifying and proving the particular number, denomination, or kind thereof (secs. 967 and 1131, Pen. Code). Furthermore, the law requires merely that a person charged with a criminal offense be informed in plain, intelligent language of the specific act he is alleged to have committed. Here the appellants apparently understood the identity of the bonds alleged to have been stolen with sufficient clearness to plead guilty to the charge.

` █ Nor are we able to sustain appellants' final contention that they have been extradited on one charge and convicted of another in violation of treaty provisions existing between the governments of the United States and Great Britain. The record shows that the extradition proceedings were grounded upon the charge contained in the second count; and even assuming, as appellants contend, that the

bonds therein described were of less value than the amount alleged, such variance as to value was immaterial in view of the fact that the same were otherwise correctly described. Moreover, appellants have doubtless waived all question of variance by pleading guilty to the charge.

The judgment and order appealed from are affirmed.

Tyler, P. J., and Cashin, J., concurred.

A petition by appellants to have the cause heard in the supreme court, after judgment in the district court of appeal, was denied by the supreme court on January 30, 1928.