[Crim. No. 20628. First Dist., Div. Three. Nov. 21, 1980.]

THE PEOPLE, Plaintiff and Respondent, v.
ROBERT O'DELL HUGHES, Defendant and Appellant.

COUNSEL

John Marshall Collins and Decker & Collins for Defendant and Appellant.

George Deukmejian, Attorney General, Robert H. Philibosian, Chief Assistant Attorney General, Edward P. O'Brien, Assistant Attorney General, Thomas A. Brady and Frances Marie Dogan, Deputy Attorneys General, for Plaintiff and Respondent.

OPINION

**DEAL, J.**—Robert O'Dell Hughes appeals from a judgment sentencing him to a total of four years in prison after he entered a plea of nolo contendere to a charge of forgery. His sole contention on appeal is that the base term of two years for forgery should not have been enhanced with an additional two years pursuant to Penal Code section 12022.6, subdivision (b),[1] which provides for such enhancement where the value of the property taken exceeds $100,000. He contends (1) that the enhancement statute is unconstitutional because it deprives him of equal protection of the laws; (2) that imposition of the enhancement violates the prohibition of multiple punishment (Pen. Code, § 654); (3) that the enhancement constitutes cruel and unusual punishment; and (4) that the court abused its discretion in failing to strike the enhancement.

Appellant's contentions are without merit and we affirm the judgment.

Appellant was charged by information filed April 11, 1979, with 23 counts of forgery (Pen. Code, § 470). Pursuant to section 12022.6, sub-

---

[1]Unless otherwise indicated, all citations are to the Penal Code.

division (b), it was alleged that, in commission of the felonies, appellant took property of a value in excess of $100,000, i.e., $196,432.05.

After appellant entered a plea of not guilty, the district attorney filed a first amended information, consolidating the 23 counts of forgery into one, and alleging that between July 24 and November 8, 1978, appellant forged checks in the sum of $196,432.05, with intent to defraud multiple named victims. The special allegation pursuant to section 12022.6 was repeated.

Appellant entered a plea of nolo contendere to the charges in the first amended information, and the trial court found the special allegation true in light of the plea.

On October 5, 1979, the court sentenced appellant to prison for a total of four years—the middle term of two years for forgery and a two-year enhancement under section 12022.6. Appellant filed timely notice of appeal.

STATEMENT OF THE FACTS

The essential facts are undisputed.

On January 10, 1972, the Los Angeles County Superior Court granted appellant five years probation for one count of grand theft which involved bad checks and juggling of trust funds in real estate transactions. He was ordered to make restitution in excess of $100,000. Appellant testified that because he did not keep up with his repayment schedule, the Los Angeles court extended his probation to a period of 10 years. At one point in 1977, the probation department recommended that he be sent to prison for two years because he was not meeting the terms of his probation.

Appellant undertook new business ventures, including Building Trends, Inc., a contractor. In the summer of 1978, the company began to have severe cash flow problems. In order to cover expenses, appellant took checks made payable jointly to Building Trends and subcontractors, endorsed them for Building Trends, admittedly forged the subcontractors' endorsements, and used the money for his own (Building Trends) purposes.

Several witnesses testified in appellant's behalf at the sentencing hearing. Robert J. McKenzie, Jr., a certified public accountant, explained the manner in which appellant solved his cash flow problem, but stated that prior to his arrest in January 1979, appellant had repaid over $63,000 of the funds in question.

R. Wayne Moles represented clients who attempted to purchase property from Building Trends, and he sat on the creditor's committee for that company's bankruptcy. At the time of the hearing he believed that Building Trends had sufficient assets to sell so that all creditors could be made whole and that some might recover interest and attorney's fees.

Daniel S. Mount, an attorney, represented appellant in the bankruptcy proceedings and described appellant's unusual efforts to make all creditors whole.

Appellant testified in his own behalf, acknowledging the above facts. He stated that he had seen a psychiatrist who was of the opinion that appellant was unable to handle stress situations involving money.

### Equal Protection

Appellant contends that his sentence enhancement under Penal Code section 12022.6, subdivision (b), denied him equal protection of the laws under the federal and state Constitutions.[2]

Penal Code section 12022.6 provides: "Any person who takes, damages or destroys any property in the commission or attempted commission of a felony, with the intent to cause such taking, damage or destruction, and the loss exceeds:

"(a) Twenty-five thousand dollars ($25,000), the court shall in addition and consecutive to the punishment prescribed for the felony or attempted felony of which the defendant has been convicted impose an additional term of one year.

"(b) One hundred thousand dollars ($100,000), the court shall in addition and consecutive to the punishment prescribed for the felony or

[2]United States Constitution, Amendment XIV: "...No State shall...deny to any person within its jurisdiction the equal protection of the law." California Constitution, article I, section 7: "(a) A person may not be...denied equal protection of the laws."

attempted felony of which the defendant has been convicted impose an additional term of two years.

"The additional terms provided in this section shall not be imposed unless the facts of the taking, damage, or destruction in excess of the amounts provided in this section are charged in the accusatory pleading and admitted or found to be true by the trier of fact."

Appellant argues that section 12022.6 creates three classes of persons, otherwise equally situated, who are treated differently. With reference to persons convicted of forgery in violation of section 470, appellant proposes that the statute creates these classes: (1) persons who take property worth up to $24,999.99, and receive a sentence of sixteen months, two or three years (Pen. Code, §§ 18, 473); (2) persons who take property worth $25,000 to $99,999.99, and receive, in addition to the base term above, a sentence enhancement of one year; and (3) persons who take property worth more than $100,000, and receive an enhancement of two years in addition to the base term. Appellant claims that there is no compelling state interest or proper state purpose which justifies these classifications.

The People concede that the two subdivisions of section 12022.6 create classifications of restraints upon liberty, and that the classifications are subject to the "strict scrutiny" test applicable to equal protection of fundamental interests. They argue that the strict scrutiny test is satisfied by a compelling state interest which justifies the classification and distinctions in the classifications which are necessary to that purpose, citing *People v. Olivas* (1976) 17 Cal.3d 236, 251 [131 Cal.Rptr. 55, 551 P.2d 375] and *People v. Gonzales* (1978) 81 Cal.App.3d 274, 277 [146 Cal.Rptr. 417].

We do not agree with the People's concession, and we find that the statute does not present a legitimate equal protection issue. "The concept of equal protection of the laws compels recognition of the proposition that persons *similarly situated* with respect to the legitimate purpose of the law receive like treatment." (*Purdy & Fitzpatrick v. State of California* (1969) 71 Cal.2d 566, 578 [79 Cal.Rptr. 77, 456 P.2d 645, 38 A.L.R.3d 1194] (italics added).) Thus, in *Olivas*, the statutory scheme operated to divide misdemeanants into two groups and permitted more severe punishment of youthful offenders though their crimes were identical to those of adults. This unequal treatment was found to violate the right to equal protection and to be without support

of a compelling state interest. Classification according to age was also at issue in *People v. Gonzales, supra,* wherein the court applied the strict scrutiny test and held that Penal Code section 286 withstood it.

Section 12022.6, on the other hand, does not create classifications of persons otherwise similarly situated. ■ It is well established that the measure of propriety of punishment for crime is individual culpability. (See *In re Rodriguez* (1975) 14 Cal.3d 639, 653 [122 Cal.Rptr. 552, 537 P.2d 384].) To this end the Legislature has declared that the purpose of imprisonment is punishment and that this purpose is best served "by terms proportionate to the seriousness of the offense." (Pen. Code, § 1170, subd. (a)(1).) It is clear that persons who commit more serious crimes requiring greater sentences are not "similarly situated" to those who have committed lesser crimes, deserving lesser sentences. (See *People v. Grisso* (1980) 104 Cal.App.3d 380, 388-389 [163 Cal.Rptr. 547].) "[I]t is one thing to hold, as did *Olivas,* that persons convicted of the *same crime* cannot be treated differently. It is quite another to hold that persons convicted of *different crimes* must be treated equally. The latter are not similarly situated for equal protection purposes." (*Smith v. Municipal Court* (1978) 78 Cal.App.3d 592, 601 [144 Cal. Rptr. 504], upholding mandatory 90-day minimum sentence for use of heroin.)

■ Every difference in punishment among criminal statutes is not subject to strict scrutiny. "*Olivas* was not intended to apply to sentencing inequalities between and among different offenses." (*Smith v. Municipal Court, supra,* 78 Cal.App.3d at pp. 601-602.) ■ While appellant is correct that section 12022.6 in combination with section 470 results in varying treatment of persons who commit forgery, for equal protection purposes we view the statutes in question not as creating classifications but as defining "different offenses."

The obvious purpose of section 12022.6 is to deter large-scale crime. (*People v. Ramirez* (1980) 109 Cal.App.3d 529, 539 [167 Cal.Rptr. 174].)[3] It was well within the Legislature's discretion to determine that

[3]*Ramirez* is the only published decision to date which discusses the validity of section 12022.6, but in that case defendant did not attack the statute on an equal protection ground. The quoted statement appears in discussion of defendant's attack on application of the statute in cases, such as his, where the statutory amount was taken but the prosecution failed to prove that the victim did not recover it. The court rejected this contention and held that the enhancement could be applied even where the victim ultimately did not suffer any out-of-pocket loss. (*People v. Ramirez, supra,* 109 Cal.App.3d at pp. 539-540.)

persons who commit forgery and thereby take large sums of money are more culpable and deserve greater punishment than those who commit forgery but take lesser amounts. "'It is the prerogative, indeed the duty, of the Legislature to recognize degrees of culpability when drafting a Penal Code. [Citation.]'" (*People* v. *Peace* (1980) 107 Cal.App.3d 996, 1004 [166 Cal.Rptr. 202]; see also, *People* v. *Thomas* (1974) 43 Cal. App.3d 862, 871 [118 Cal.Rptr. 226] (upholding as constitutional classifications in § 487 establishing grand theft in certain circumstances).) We conclude that section 12022.6 does not create classifications within the meaning of equal protection analysis.

### *Penal Code Section 654*

■ Appellant contends that the aggregation of the 23 forgeries originally charged into 1 count and the consequent enhancement under section 12022.6 constitutes violation of section 654. That section provides: "An act or omission which is made punishable in different ways by different provisions of this code may be punished under either of such provisions, but in no case can it be punished under more than one; . . ." Appellant did not raise this issue below.[4] He asserts that by his plea of nolo contendere he did not acquiesce to the aggregation and that the issue is properly before us. He cites no authority for this proposition. ■ With exceptions not relevant to our discussion, the plea of nolo contendere has the same legal effect as a guilty plea. (§ 1016.) ■ A plea of guilty waives any defects in form of the allegations of the accusatory pleading. (*People* v. *Dysart* (1940) 39 Cal.App.2d 287, 292 [102 P.2d 1091].) It also waives any variance as to stated value of items taken if they are otherwise correctly described (*People* v. *Blumen* (1927) 87 Cal.App. 236, 242-243 [261 P. 1103]); and it waives territorial jurisdiction (*People* v. *Tabucchi* (1976) 64 Cal.App.3d 133, 141 [134 Cal.Rptr. 245]).

■ Most importantly, a guilty plea waives the right to an appellate challenge based on insufficiency of the evidence and implies admission that the People can establish every element of the charged offense, thus

---

[4]The record does not disclose the reason that the defense failed to object to the aggregation. We note that had appellant gone to trial charged with 23 separate counts of forgery, each involving less than $25,000, he would have run the risk of receiving a prison term of eight years (an upper base term of three years (§§ 18, 473; Cal. Rules of Court, rule 421), plus a maximum of five years subordinate terms for consecutive offenses (§ 1170.1, subd. (a); rule 425)). By accepting the amendment to the information appellant reduced the maximum term to which he might be subjected to five years (an upper base term of three years, plus the enhancement under § 12022.6).

obviating the need for them to come forward with any evidence. (*People v. Martin* (1973) 9 Cal.3d 687, 694 [108 Cal.Rptr. 809, 511 P.2d 1161].) Implicit in the district attorney's aggregation of 23 transactions into one forgery count is the notion that appellant engaged in an indivisible course of conduct and committed but one offense. Whether this was true is a question of the intent and objective of the actor. (*Neal v. State of California* (1960) 55 Cal.2d 11, 19 [9 Cal.Rptr. 607, 357 P.2d 839].) This is a question of fact which appellant must be deemed to have waived by his plea. *People v. Neder* (1971) 16 Cal.App.3d 846 [94 Cal.Rptr. 364],[5] upon which appellant relies is distinguishable for this reason.[6]

---

[5]In *People v. Neder, supra*, 16 Cal.App.3d 846 [94 Cal.Rptr. 364], defendant took part in using a stolen Sears credit card to make three purchases in a Sears store and was convicted of three counts of forgery. One contention was that the acts of forgery were part of a single plan and therefore constituted a single offense under *People v. Bailey* (1961) 55 Cal.2d 514 [11 Cal.Rptr. 543, 360 P.2d 39], which stands for the proposition that in cases involving theft where several takings are motivated by one intention, one general impulse, and one plan, the entire transaction is held to be a single crime. The Court of Appeal rejected this contention because it was of the view that the *Bailey* doctrine should not be extended to forgery. (16 Cal.App.3d at p. 852.) The court reasoned that because the essential act in all kinds of theft is taking, "[i]f a certain amount of money or property has been taken pursuant to one plan, it is most reasonable to consider the whole plan rather than to differentiate each component part. [Citation.] The real essence of the crime of forgery, however, is not concerned with the end, i.e., what is obtained or taken by the forgery; it has to do with the means, i.e., the act of signing the name of another with intent to defraud and without authority...." (*Id.*, at pp. 852-853.) The court opined that "The designation of a series of forgeries as one forgery would be a confusing fiction." (*Id.*, at p. 853.)

In addressing defendant's argument under section 654 and the *Neal* decision, the *Neder* court found that his objective "of taking goods from Sears" was "too broad to tie the separate acts into one transaction." (*Id.*, at pp. 853-854.) The court applied an objective rather than subjective test to the facts before it and held that "the most reasonable solution is that the several forgeries did not form an indivisible transaction." (*Id.*, at p. 855.)

We do not read *Neder* as holding that as a matter of law a series of forgeries cannot constitute an indivisible transaction. Defendant there pled not guilty; therefore the appellate court had before it for consideration all of the facts developed at trial. In the case at bench we have a synopsis of facts in the probation report from which it may reasonably be inferred that appellant committed 23 acts which in fact constituted 1 offense. Furthermore, one of the premises of the *Neder* decision no longer exists. In light of the Legislature's enactment of section 12022.6, it can no longer be said that the crime of forgery "is not concerned with the end, i.e., what is obtained or taken by forgery...," but only with the means. Therefore were the issue properly presented to us on this appeal we would be inclined to hold that the *Bailey* doctrine may be extended to the crime of forgery. In light of appellant's plea, however, we decline to reach the issue.

[6]Appellant does not contend that application of section 12022.6, per se, violates section 654. It has been held that this is not the case. (*People v. Ramirez, supra*, 109 Cal.App.3d 529, 540.)

## Cruel or Unusual Punishment

■ Appellant contends that the four-year sentence which he received constitutes cruel or unusual punishment in violation of the federal and state Constitutions.[7] (U.S. Const., Amend. VIII; Cal. Const., art. I, § 17.) Relying on *In re Lynch* (1972) 8 Cal.3d 410 [105 Cal. Rptr. 217, 503 P.2d 921], appellant argues that the punishment is disproportionate to the crime when two criteria are considered: (1) the nature of the offense and the offender, with particular regard to the degree of danger both present to society (*id.*, at p. 425); and (2) comparison of the challenged penalty with punishments prescribed in California for different offenses which, by the same test, must be deemed more serious (*id.*, at p. 426).[8]

Appellant suggests that because his crime was not violent his term is disproportionate. Other factors to be considered under this facet of the *Lynch* test are (1) the facts of the crime itself, (2) "whether there are rational gradations of culpability that can be made on the basis of injury to the victim or to society in general," and (3) "the penological purposes of the prescribed punishment." (*In re Foss* (1974) 10 Cal.3d 910, 919-920 [112 Cal.Rptr. 649, 519 P.2d 1073].)

While it is true that appellant's offense was nonviolent, the record before us reveals a planned series of acts involving multiple victims who suffered substantial financial loss. Consideration of the facts of the crime does not indicate that a four-year sentence is excessive. The statutory scheme under consideration (§§ 470, 12022.6) reflects a clear attempt to provide increased punishment in cases of greater culpability based upon injury to the victims and society. The valid penological purpose, as noted above, is to deter large-scale crime. (*People* v. *Ramirez, supra,* 109 Cal.App.3d 529, 539.) Appellant has not shown that his punishment is disproportionate under the first *Lynch* criterion.

Appellant compares the prison sentence which he received with these other California crimes and sentences: First degree burglary, 2, 4, or 6 years (§ 461); second degree burglary, county jail or 16 months, 2 or 3

---

[7]Appellant does not contend that the prison term of two years for violation of section 470 offends constitutional limitations.

[8]Appellant does not argue that the punishment is disproportionate under the third *Lynch* criterion, i.e., a comparison of the challenged penalty with the punishment prescribed for the same offense in other jurisdictions. (8 Cal.3d at p. 427.)

years (§§ 18, 461); mayhem, 2, 4 or 6 years (§ 204); kidnaping, 3, 5 or 7 years (§ 207); robbery, 2, 3 or 5 years (§ 213); and robbery of an operator of a motor vehicle for hire, 3, 4 or 6 years (§ 211a). In drawing his comparison appellant neglects to take into account that section 12022.6 by its terms applies to all felonies. Therefore the sentences referred to are misleading. For example, a defendant who commits first degree burglary and takes property valued at more than $100,000 may receive a middle term of four years, plus a two-year enhancement under section 12022.6, for a sentence of six years. Conceding arguendo appellant's assertion that burglary is a more serious offense than forgery, so too is the penalty. The same is true of the robbery offenses which he cites. As to the other offenses (mayhem and kidnaping), they may be more serious than forgery, but they do not carry a lesser penalty as to render appellant's sentence suspect under the second prong of the *Lynch* test.

Appellant has not been subjected to cruel or unusual punishment.

### *Abuse of Discretion*

■ Appellant contends that the trial court abused its discretion when it failed to strike the enhancement for purposes of sentencing.[9] He focuses on the court's statements to the effect that those who commit white collar crimes are as culpable as other criminals; and he suggests that the court failed to consider circumstances in mitigation, particularly the fact that he made a large amount of restitution. This assignment of error is not supported by the record.

It is clear from the trial court's statement of reasons for its sentence choice that it was aware of the fact that appellant had made restitution and that this was a factor to be considered in mitigation under rule 423. (Cal. Rules of Court, rule 423(b)(5).) The court was of the view, however, that the circumstances in aggravation were of more weight, that is, the crime involved multiple victims, the crime was premeditated, appellant took advantage of a position of trust, appellant was on probation at the time of the offense, and appellant's prior performance on probation was unsatisfactory. (Cal. Rules of Court, rule

---

[9]Section 1170.1, subdivision (g), provides: "(g) Notwithstanding any other provision of law, the court may strike the additional punishment for the enhancements provided in Sections 667.5, 12022, 12022.5, 12022.6, and 12022.7 if it determines that there are circumstances in mitigation of the additional punishment and states on the record its reasons for striking the additional punishment."

421.) The court did not abuse its discretion in failing to strike the enhancement; the sentence was otherwise proper.

The judgment is affirmed.

White, P. J., and Scott, J., concurred.