Filed 3/5/14  P. v. Holmes CA2/1

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

### IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

### SECOND APPELLATE DISTRICT

### DIVISION ONE

|  |  |
|---|---|
| THE PEOPLE, | B245636 |
| Plaintiff and Respondent, | (Los Angeles County Super. Ct. No. NA065201) |
| v. |  |
| ANTHONY HOLMES, |  |
| Defendant and Appellant. |  |

Appeal from denial of Petition for Writ of Error *Coram Nobis*.  Jesse I. Rodriguez, Judge.  Affirmed.

Donald I. Stansbarger, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Lance E. Winters, Senior Assistant Attorney General, Scott A. Taryle, Supervising Deputy Attorney General, Pamela C. Hamanaka, Deputy Attorney General, for Plaintiff and Respondent.

_____

Appellant Anthony Holmes appeals from the superior court's denial of his petition for writ of error *coram nobis*, based on his allegation of newly discovered evidence showing his innocence of charges for which he had earlier pleaded no contest and had served his sentence. The court denied the petition without an evidentiary hearing, finding that the petition failed to raise a prima facie case for relief. We conclude that Holmes is ineligible for the relief he seeks under the facts alleged in his petition and the record in this case. On this basis we affirm the denial of his petition.

## Background

In April 2005, defendant Anthony Holmes was charged in a felony complaint with four counts alleging possession of a firearm by a felon (Pen. Code, § 12021, subd. (a)(1)), possession of ammunition (Pen. Code, § 12316, subd. (b)(1)), possession for sale of a controlled substance, methamphetamine (Health & Saf. Code, § 11378), and possession of marijuana for sale (Health & Saf. Code, § 11359). At least a portion of the drugs had been found during a search, pursuant to warrant, in a common-area storage room of the apartment building in which Holmes and his family lived.[1] Three prior prison terms were alleged.

---

[1] A March 22, 2005 search of Holmes's car had resulted in seizure of a .40-caliber pistol loaded with a loaded 10-round magazine, and $4,452 in currency. Upon his arrest as a felon in possession of a firearm, a bag containing a small quantity of marijuana was found in his pocket. In a subsequent canine search of the car, a narcotics-trained dog located an aerosol spray can with a false bottom, of the sort used by drug traffickers to conceal contraband.

The items found in Holmes's apartment in a search the next day pursuant to a warrant included two plastic bags containing 1.45 grams of cocaine and 67.41 grams of marijuana, respectively; two pouches containing $3,795 and $657, respectively, totaling $4,452; a bullet-proof vest; two digital scales; brass knuckles; two throwing knives and a knife sheath; a gun holster; two 10-round nine-millimeter ammunition magazines and one 10-round .40-caliber ammunition magazine; and 110 rounds of ammunition of various calibers (two of which were hollow-point bullets), including .45-caliber, .40-caliber, .38-caliber, and .32-caliber. From a storage room of the apartment building the police recovered a black suitcase with an attached nametag bearing Holmes's name, containing 1,073.04 grams of methamphetamine and 15 pounds of marijuana.

Following trial court proceedings resulting in suppression of the evidence and dismissal of the complaint, the complaint was reinstated and consolidated with a fifth charge of transportation for sale of marijuana (Health & Saf. Code, 11360, subd. (a)). In March 2006, Holmes pleaded no contest to all five counts, and admitted the complaint's special allegations. Following counsel's stipulation to the factual basis for the plea based on the police report and the preliminary hearing transcript, the court found the pleas to have been voluntarily and intelligently made, and factually supported. Holmes was given a suspended sentence of 10 years and 8 months, with five years of formal probation and 365 days in county jail.

In May 2010, Holmes had served his jail time and received early termination of his probation. On August 7, 2012, Holmes's petition for dismissal of his case was granted. (Pen. Code, § 1203.4.)[2]

On August 13, 2012, Holmes filed a verified petition for writ of error *coram nobis*, seeking to vacate the conviction resulting from his plea bargain, based on newly discovered evidence "that completely undermines the prosecution's case against Holmes and points to his innocence and will prove that Holmes is actually innocent" of the crimes for which he was convicted. The petition alleged that in May or June 2012, a long-time friend and family acquaintance named Victor Schwarm had learned that the 2005 charges against Holmes, and Holmes's 2006 plea to them, arose from drugs found in the storage room of the apartment building in which Holmes and his family lived, and that Holmes was then facing extended incarceration in a pending federal case due to his 2006 plea in

---

[2] Under this provision, following completion of probation an offender may in some circumstances petition the court to withdraw a guilty plea and enter a not guilty plea or set aside a verdict of guilty and have the matter dismissed. (Pen. Code, § 1203.4.) Even after dismissal, however, the fact of the conviction may be used for certain purposes, such as a prior conviction used to enhance punishment. (*Adams v. County of Sacramento* (1991) 235 Cal.App.3d 872, 878.) Because the judgment of conviction exists for some purposes after the granting of relief under Penal Code section 1203.4, it remains subject to attack by petition for writ of error *coram nobis*. (*People v. Wiedersperg* (1975) 44 Cal.App.3d 550, 554 [disapproved on another ground in *People v. Kim* (2009) 45 Cal.4th 1078, 1103-1104].)

Further statutory references are to the Penal Code unless otherwise specified.

this case. Schwarm then disclosed for the first time to Holmes and his attorney that it was he who had hidden the drugs in the apartment building's storage room, and averred that Holmes had no knowledge of the drugs that the police had found there.

Holmes's petition attached Schwarm's two-page statement, dated and notarized August 11, 2012, detailing how he and his brother had obtained the drugs from the backyard of a house at which he was doing plumbing work; how he had secretly hidden the drugs in an empty suitcase in the apartment's storage room, intending to later figure out what to do with them; how a few days later, shortly after Holmes's arrest, he had found that the drugs were gone from the storage room, but he did not know what had happened to them; and how he had not told anyone about the drugs during the ensuing seven years, because he was "fearful about saying anything about these items to anyone for a long time," until he learned in 2012 that Holmes was facing "significant prison time" for federal charges due to his earlier plea on the drug charges.

The petition contends that Schwarm's statement shows that Holmes was innocent of the crimes on which his 2006 plea and conviction was based, and that this evidence could not have been discovered earlier.

The People's return to the petition admitted many of the petition's allegations, with notable exceptions. It expressly denied the petition's allegation that the drugs found in the suitcase were not in Holmes's possession or control, citing three facts: (1) the suitcase's attached nametag bore Holmes's name; (2) when Holmes saw that the police had recovered the suitcase containing the drugs, Holmes had said to them that "[a]ll that stuff is mine," and that the others in the apartment knew nothing about it, and he had asked what he could do to make some kind of a deal; and (3) Holmes had said in a recorded interview at the police station that the drugs in the suitcase had been delivered to him by a friend with instructions to sell them if possible. The People's return also expressly denied the petition's allegation that Schwarm's evidence was new, that it had been unavailable when Holmes had entered his plea, or that it points unerringly to Holmes's innocence (based on Holmes's admissions after the police found the suitcase).

4

Holmes's traverse to the return (without verification, though signed by Holmes's attorney) reaffirmed the petition's central facts, and alleged a number of additional facts. It specifically denied that the nametag on the suitcase found in the apartment building storeroom showed his control of the drugs, because the storeroom was not a part of or connected to his apartment, because it was not within his control and was accessible to others (including Schwarm), and because Schwarm had confessed that he had placed the drugs in the suitcase in the storeroom without Holmes's knowledge. And it denied that his admission of possession when the drugs were found shows that the drugs were within his control, because his statement was not audio recorded. However, the traverse does not deny Holmes's possession of—or even mention—the indicia of drug trafficking (marijuana, cocaine, scales, currency, firearms, ammunition, brass knuckles, and bullet-proof vest) found in Holmes's apartment.

The traverse to the return states that Holmes made the audio-recorded admission of his control of the drugs at the police station only because a named detective had told him that unless he did so, everyone at the apartment—his grandmother, his mother, his young son, his brother, his cousin, and a friend—would be jailed. And it repeats the petition's allegation that Holmes "had no idea that the drugs were in the black suitcase in the heater/storage room in the garage when discovered by the police."

The traverse also repeats the petition's allegation that the plea bargain offer faced Holmes with an "impossible decision," because the case had been dismissed under section 1538.5 then reinstated under section 871.5 with an additional charge against him, and his section 995 motion had been denied. He was facing five felony charges, with a potential for more than 10 years in prison, away from his eight-year-old son, if he did not plead to the charges, but only one year in county jail and five years probation if he accepted the plea. While the traverse provides no more information than did the petition concerning the continuing collateral consequences facing Holmes as a result of his plea to the drug charges, it alleges that Holmes now faces a sentence of 32 years to life in prison in a current federal case, but without this conviction he would face a sentence of only 10 years.

5

Following a November 15, 2012 non-evidentiary hearing, the trial court found the petition raised no prima facia basis for issuance of an order to show cause or hearing on the merits, and denied the petition. On November 30, 2012, Holmes filed his timely appeal.

## Discussion

### 1. The Petition and Standard of Review.

The writ of error *coram nobis* is the modern equivalent of a nonstatutory motion to vacate a conviction. Its role "'is to secure relief, where no other remedy exists, from a judgment rendered while there existed some fact which would have prevented its rendition if the trial court had known it and which, through no negligence or fault of the defendant, was not then known to the court' [citation]." (*People v. Kim* (2009) 45 Cal.4th 1078, 1091.) The procedures for bringing and adjudicating a petition for the writ are the same as those that govern writs of habeas corpus. (§ 1473.6, subd. (c); *People v. Tuthill* (1948) 32 Cal.2d 819, 821.)

The substantive requirements for obtaining the writ under modern law are set forth in *People v. Shipman* (1965) 62 Cal.2d 226 (*Shipman*). The writ is available only when three requirements are met: (1) The petitioner must show the existence of some fact which, without fault or negligence on his part, was not presented to the court at the trial on the merits, and which if presented would have prevented the rendition of the judgment. (2) The petitioner must show that the newly discovered fact does not go to the merits of issues previously tried (which cannot be reopened). (3) The petitioner "'must show that the facts upon which he relies were not known to him and could not in the exercise of due diligence have been discovered by him at any time substantially earlier than the time of his motion for the writ. . . .' [Citations.]" (*Id.* at p. 230; *People v. Kim*, *supra*, 45 Cal.4th at p. 1093.) If the facts alleged in the petition show that substantial issues exist as to the petitioner's entitlement to relief—if they are sufficient, if believed, to make a prima facie showing of the elements required for issuance of the writ—the matter must be heard on its merits. However, if the petition and court records show that

6

the petition has no merit, it should be denied summarily, without an evidentiary hearing. (*In re Hardy* (2007) 41 Cal.4th 977, 990; *Shipman*, *supra*, 62 Cal.2d at p. 231.)

We review the trial court's ruling on the petition for the writ of error *coram nobis* for abuse of discretion. (*People v. Kim*, *supra*, 45 Cal.4th at pp. 1095-1096.) We find no abuse of discretion in the trial court's summary denial of the writ in this case.

**2. The Newly Discovered Evidence Alleged By The Petition Does Not Satisfy The Requirements For Relief.**

**a. The newly discovered evidence goes to the merits of the facts on which Holmes's conviction was based.**

Facts that are set forth in the return, but are not disputed in the traverse, are deemed true. (*People v. Duvall* (1995) 9 Cal.4th 464, 477.) Nothing in the petition or the traverse disputes or contradicts the allegation that Holmes admitted that the drugs were his. It therefore is established, for the purposes of this proceeding, that Holmes made that admission when the drugs were found.

Holmes's petition does not dispute that he was convicted of the crimes with which he was charged, including possession of the drugs found in the apartment building's storeroom. It does not deny that when the drugs were found Holmes admitted to the police that they were his.[3] It does not deny that he later gave a recorded statement to the

---

[3] The People's return to the petition affirmatively alleges Holmes's admission when the drugs were found that the drugs were his. Holmes's (unverified) traverse does not deny that he had made that admission when the drugs were found, although it specifically denies the truth of that admission. It says only that the admission "was not audio recorded and all we have is the alleged statement made by the police in the police report."

police in which he again admitted that the drugs were his.[4]  And it does not address the items seized from his apartment, apart from the drugs referenced in Schwarm's admission, that are commonly associated with drug trafficking, including marijuana, cocaine, scales, currency, a false-bottom container, firearms, ammunition, brass knuckles, and a bullet-proof vest.

The petition not only fails to deny Holmes's possession of the drugs and ancillary paraphernalia seized from his car and apartment, and fails to deny that he admitted his possession of the drugs seized from the suitcase in the apartment building's storeroom, but it also affirmatively alleges that he pleaded no contest to the charges against him— including the charges of his possession of the drugs—thereby effectively admitting that he was in fact guilty of those charges.  (§ 1016 [no contest plea has same legal effect as guilty plea]; *People v. Hughes* (1980) 112 Cal.App.3d 452, 460-461 [no contest plea implies admission that People can establish every element of charged offense]; *Rusheen v. Drews* (2002) 99 Cal.App.4th 279, 284 [no contest plea to felony is admissible against defendant as an admission].)  He expressly confirmed to the sentencing court that no one had threatened him or his family members in order to force his no contest plea.

Nothing in the petition challenges his admissions of possession; his petition instead seeks relief from collateral consequences of his admissions and pleas.  Without denying that he admitted possession of the drugs, the petition alleges that "one of the

---

[4] Holmes's traverse concedes that he admitted his control of the drugs in statements to the police, alleging that he did so only because the police had told him that everyone else in the apartment—his extended family and a friend—would also be jailed if he did not.  But if his admissions were the result of coercion, that fact was known to him at the time; he could have challenged their use in the trial court, but he did not.  (*In re Sakarias* (2005) 35 Cal.4th 140, 145, 169-171 [claim that admissions were taken in violation of *Miranda* rights is subject to denial on procedural grounds where it could have been earlier raised, but was not]; see *In re Seaton* (2004) 34 Cal.4th 193, 199–200 [claim forfeited on appeal because it was not raised at trial is also barred on habeas corpus, unless facts essential to the claim were not and could not reasonably have been earlier discovered]; *People v. Wheeler* (1970) 5 Cal.App.3d 534, 538 [*coram nobis* is not available where facts concerning the charges against petitioner were known when he pleaded].)

8

reasons" Holmes now faces 32 years to life in federal prison is his earlier no-contest plea to the drug charges in this case. In other words, construed liberally, he alleges that one of the reasons for the federal sentence he currently faces would be eliminated if he had not previously admitted that he possessed the drugs, and if he had not suffered the resulting convictions.

The petition seeks relief solely on the ground that Holmes has now discovered facts which, if he had known them at the time, would have constituted evidence that the drugs were not his—evidence that he was not guilty of the drug charges to which he pleaded no contest. However, that ground—his discovery of the facts set forth in his petition—does not entitle him to the relief he seeks, even if the facts were found to be true.

The second of the three requirements for entitlement to a writ of error *coram nobis* is a showing that the newly discovered facts do not go to the merits of issues previously tried. (*Shipman*, *supra*, 62 Cal.2d at p. 230; *People v. Kim*, *supra*, 45 Cal.4th at p. 1093.) "It is a general rule that the writ will not be granted for newly discovered evidence going to the merits of the issues tried; issues of fact, once adjudicated, even though incorrectly, cannot be reopened except on motion for new trial." (*People v. Tuthill*, *supra*, 32 Cal.2d 822.)[5] Holmes's petition cannot satisfy that requirement, because the newly discovered facts on which the petition rests squarely challenge the factual basis on which his conviction rests.

Holmes's conviction constitutes a determination that he possessed the drugs found in the storeroom of his apartment building. But his petition seeks to have his conviction set aside on the ground that those drugs were not his. He claims now to have evidence to show his nonpossession of those drugs—Schwarm's statement—although he lacked that evidence when he pleaded to the possession charges.

---

[5] "[T]he writ of error *coram nobis* '"does not lie to correct any error in the judgment of the court nor to contradict or put in issue any fact directly passed upon and affirmed by the judgment itself. If this could be, there would be no end of litigation. . . ."'" (*People v. Kim*, *supra*, 45 Cal.4th at p. 1092.)

9

Holmes's belated discovery of evidence that would have been material and helpful to his defense against the charges he faced at the time of his plea does not constitute grounds for setting aside his admissions of possession, much less his decision to forego trial in favor of a beneficial plea bargain, his pleas of no contest to the charges against him, and his resulting conviction on those charges. The judgment of conviction constitutes a determination that Holmes was guilty of possession of the drugs. "'[T]he motion [to vacate the conviction] or writ is not available where a defendant voluntarily and with knowledge of the facts pleaded guilty or admitted alleged prior convictions because of ignorance or mistake as to the legal effect of those facts.'" (*People v. Kim*, *supra*, 45 Cal.4th at p. 1093; *People v. Banks* (1959) 53 Cal.2d 370, 378.)

### b. The newly discovered evidence does not show Holmes's actual innocence of the charges for which he was convicted.

Schwarm's newly discovered evidence, even if it had been known when Holmes pleaded to the charges, would not have precluded his conviction. It would merely have contradicted some of the evidence on which his conviction was based.

Schwarm's statement amounts to some evidence that Holmes did not possess the drugs that had been found in the apartment building's storeroom. But it leaves unimpeached the evidence of his possession of the currency and container of the sort used to conceal contraband found in his car; the cocaine and marijuana, the digital scales, and the large amounts of cash found in his apartment; and the firearms, ammunition, bullet-proof vest, and other weapons also found in his apartment. Although the quantity of seized contraband would have been somewhat smaller without the methamphetamine and marijuana that was found in the storage-room suitcase, the items found in his apartment (which are unmentioned in Schwarm's statement and which Holmes has not denied were his) remain sufficient to support his conviction on the charges of weapons possession and possession of drugs for sale for which he was convicted, except only the charge of possession of methamphetamine for sale. The newly discovered evidence therefore does not show Holmes's actual innocence of the charges to which he pled and for which he was convicted.

The central fact in the newly discovered evidence is Schwarm's admission that the drugs found in the storeroom were his, not Holmes's. That admission is of dubious credibility, of course, in light of the extensive evidence found in Holmes's apartment that Holmes was involved in drug-dealing activities. But Schwarm's admission that the drugs found in the storeroom were his, even if accepted as true, was not a fact wholly unknown to Holmes when he admitted to the police that the drugs were his. If those drugs were Schwarm's, Holmes knew when he admitted possession, and when he entered his plea of no contest to the charges, that the drugs were not his. Even if he did not then know to whom the drugs belonged, he could have denied that they were his (though he apparently believed he lacked the evidence he would need to prevail on that claim, in light of the strong evidence showing otherwise).

The only material fact in Schwarm's statement that was unknown to Holmes when he admitted possession and pleaded no contest to the charges was the fact that Schwarm later admitted his own possession of the drugs found in Holmes's suitcase. That fact, if it had been known, would not have negated his earlier admissions of possession of those drugs, nor would it have even contradicted the evidence of his possession shown by the facts that drugs were found in a suitcase with his name on it, stored in his apartment building's storeroom, and that other drugs, weapons, cash, and drug-sales paraphernalia were found in his own apartment and car. Holmes's petition thus failed to make a showing of his actual innocence of the charges for which he was convicted. (See *People v. Tuthill*, *supra*, 32 Cal.2d at p. 827 [newly discovered evidence, though material and possibly beneficial to the defendant at trial, would not have necessarily precluded the entry of the judgment and therefore does not satisfy requirements for *coram nobis*].)

Holmes expressly confirmed to the sentencing court that he had consulted with counsel before pleading to the charges, and that he had been advised that his no-contest pleas constituted incriminating statements that could be used against him in future criminal proceedings, the same as guilty pleas. He now contends that "[a]ll one has to do to clearly see that the Petitioner was facing an impossible decision is to look at the suspended sentence received by him as a result of his plea bargain," because "his prison

11

exposure for the charges if he took his case to trial would be ten years and eight months," but if he accepted the plea bargain "he would only be exposed to a year in the county jail." He chose to accept the plea bargain knowing that he was not guilty of the charges, he alleges, because he was "fearful of what could happen if he chose to take his case to trial." But the "impossible decision" he faced was the same, with or without Schwarm's statement. Either way, his prison exposure if he went to trial was ten years and eight months, while his incarceration if he accepted the plea bargain was a maximum of a year in the county jail.

Even if the record in this case were sufficient to support a determination that Holmes would not have pleaded guilty or no contest to the charges if he had known the facts in Schwarm's statement, the relief he seeks would not be available. "New facts that would merely have affected the willingness of a litigant to enter a plea, or would have encouraged or convinced him or her to make different strategic choices or seek a different disposition, are not facts that would have prevented rendition of the judgment," or that would support a writ of error *coram nobis.* (*People v. Kim*, *supra*, 45 Cal.4th at p. 1103.)

## Conclusion

The facts alleged in the petition do not make a prima facie showing of the elements required for issuance of a writ of error *coram nobis.* They go directly to the merits of the facts established by Holmes's conviction, they are not sufficient to have precluded its entry, and they do not establish Holmes's actual innocence. Because, even if believed, they could not establish Holmes's entitlement to relief, they are not sufficient to require a hearing on their merits. Summary denial was appropriate. (*People v. Shipman, supra,* 62 Cal.2d at p. 231.)

## Disposition

The order denying the petition for writ of error *coram nobis* is affirmed.

NOT TO BE PUBLISHED.


                                        CHANEY, Acting P. J.


We concur:


        JOHNSON, J.


        MILLER, J. Pro Tem[*]

---

[*] Judge of the Los Angeles Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.

13