[Crim. No. 2577. Fifth Dist., Nov. 23, 1976.]

THE PEOPLE, Plaintiff and Respondent, v.
RAYMOND LEROY TABUCCHI, Defendant and Appellant.

134

**COUNSEL**

Cooper, Newhouse, Hertz & Lyons and Howard Hertz for Defendant and Appellant.

Evelle J. Younger, Attorney General, Jack R. Winkler, Chief Assistant Attorney General, Arnold O. Overoye, Assistant Attorney General, Roger E. Venturi, Susan Cohn and J. Rodney Davis, Deputy Attorneys General, for Plaintiff and Respondent.

**OPINION**

**FRANSON, J.—**

### STATEMENT OF THE CASE

Appellant and his wife, Lynda Tabucchi, were charged in the County of Stanislaus of the crimes of count I, violation of Penal Code section 182 (conspiracy); count II, violation of Health and Safety Code section 11379 (transportation and sale of a controlled substance—phencyclindine); count III, violation of Health and Safety Code section 11359 (possession of marijuana for sale); count IV, violation of Health and Safety Code section 11378 (possession of a controlled substance—phencyclindine—for sale); and count V, violation of Health and Safety Code section 11377 (possession of a controlled substance—barbiturates).

A preliminary hearing was held in the Municipal Court of the Modesto Judicial District, County of Stanislaus, and both defendants were held to answer.

At arraignment in the superior court appellant and his wife entered pleas of not guilty to all counts. Their motion to consolidate their cases for trial was granted.

Thereafter, pursuant to a plea bargain with the People, appellant moved to withdraw his former pleas of not guilty and to enter a new and different plea. After being advised of his rights, including the fact that he was subjecting himself to a possible prison term of from five years to life, appellant entered a plea of guilty to count II, violation of Health and Safety Code section 11379, transportation and sale of a controlled substance, a felony, as charged in the information. Upon motion by counsel for the People, the court ordered that counts I, III, IV, and V against appellant be dismissed in the interests of justice. The trial court also dismissed the charges against appellant's wife, Lynda Tabucchi. In addition, the information was amended to show that the offense alleged in count II and to which the defendant had entered a plea of guilty, occurred in the Counties of Stanislaus and Tuolumne.

On November 21, 1975, prior to pronouncement of judgment, appellant moved to withdraw his guilty plea. In support of his motion he alleged several grounds, among which were: (1) that the court lacked jurisdiction to pronounce judgment with respect to count II because the proper venue for trial of the alleged sale of phencyclindine, hereinafter "PCP," to which appellant pleaded guilty was in Tuolumne rather than Stanislaus County, and (2) that the plea of guilty was made without effective assistance of counsel because appellant had not been informed of and did not understand the full consequences of his plea in that if he were sentenced to state prison he would not be eligible for release or parole until he had served a minimum of three years. Appellant, through his new counsel, Mr. Hertz, advised the trial court that when he entered his plea of guilty to count II, he was acting under the belief that if he were sentenced to state prison he would be eligible for parole after he had served one-third of the minimum five-year term or twenty months.

The trial court denied appellant's motion and sentenced appellant to state prison.[1]

---

[1]Appellant also alleged as a ground for withdrawing his plea the ineffective representation by his counsel in not moving under Penal Code section 1538.5 to suppress the contraband seized at his premises on July 8, 1975, as the product of an unlawful search and seizure. This contraband was the basis for the charges contained in counts III, IV, and V. Because, as hereafter explained, the matter must be remanded to the trial court to allow appellant to withdraw his plea of guilty to count II, appellant will have full opportunity to move under Penal Code section 1538.5 to suppress the contraband seized at his residence; thus, we need not discuss the search and seizure contention.

## FACTS

To evaluate appellant's jurisdictional contention, we must relate in some detail the facts giving rise to the charge of a sale by appellant of PCP in Stanislaus County.

Several weeks prior to July 6, 1975, Mrs. Jerry Truitt, a police informant who resided in Stanislaus County, told Narcotics Agent Vince Ladd that one Charles Lee Busby had asked her to keep what she believed to be narcotics in her refrigerator. Officer Ladd told Mrs. Truitt to tell Busby that Ladd was involved in large scale narcotics operations and that he was interested in purchasing a kilo of PCP. Mrs. Truitt did so inform Busby, and a meeting was arranged for the evening of July 6, 1975.

At the meeting on July 6, 1975, at the Nutcracker Inn (Stanislaus County) Ladd was introduced to Busby by Mrs. Truitt. Ladd told Busby that he was from the bay area, that he "did quite a few deals" in that area, that he knew many people around the Modesto area, and that his main business connections were in the bay area. Busby asked Ladd to go to Busby's apartment to set up a deal.

At Busby's apartment, which was in Oakdale (Stanislaus County), Busby inquired if Ladd was interested in purchasing two pounds of PCP. Officer Ladd said that he was interested. Busby said that PCP was selling for $5,000 a pound. The men exchanged phone numbers and agreed to continue negotiations the next day.

The next day, July 7, 1975, Ladd and Busby met at a park at 3rd and B Streets in Oakdale. Ladd showed Busby $10,000 and Busby told Ladd that he would go and get the PCP. Busby pointed in a northerly direction and told Ladd that the person who had the PCP lived that way, that Busby would be gone 20 minutes and would return with the PCP. When Busby returned, he told Ladd that the person with the PCP wanted the money first prior to delivery of the drug. Ladd would not agree to that arrangement, and Busby said he would be gone a while and see what he could arrange. When Busby returned the second time, he told Ladd that he had only three ounces of PCP and wanted $3,000 for it. Ladd told Busby he was not interested in that amount and that the deal was for two pounds. Busby then left for the third time and returned on foot 15 minutes later. Thereafter, Ladd dropped Busby off at his home, and Busby said he would call later.

Busby was kept under surveillance during his absences from Officer Ladd by Officer Gerald Matt. On one occasion when Busby left Ladd at the park in Oakdale, Busby drove his vehicle north onto Yosemite Avenue. He was followed by a yellow Volkswagen sedan, driven by an unidentified male. Both of these vehicles drove north to the intersection of Highway 120 and 26 Mile Road. There Busby and the unidentified male met with appellant, Raymond Tabucchi, who was in a 1972 red Mazda. This meeting took place in Stanislaus County.[2]

In a phone conversation in the evening of July 7, 1975, Busby assured Officer Ladd that a pound was ready to go the next morning. On July 8, 1975, Ladd and Busby drove in Ladd's car from Oakdale to Sonora. On the way Busby told Ladd that the people with the PCP lived "just outside Columbia." When they arrived at Sonora, Busby and Ladd went to the Round Table Pizza Parlor where Busby was introduced to Officer Wright, posing as Ladd's "money man." Busby made a telephone call, and then Ladd and Busby drove to Columbia where Busby made another telephone call. Busby then told Ladd that everything was set and that they were to pick up the person with the PCP.

Busby and Ladd drove out of Columbia on Italian Bar Road until they saw a 1972 red Mazda parked on the side of the road. Appellant was seated in the Mazda. The red Mazda was the same one that had been at Highway 120 and 26 Mile Road (Stanislaus County) the previous day. Busby told Ladd that appellant was the person that had the PCP. At Busby's direction Ladd dropped Busby off and continued driving. A quarter of a mile down the road Ladd turned around and drove back as instructed by Busby. Ladd saw Busby and appellant in the Mazda. Busby was holding what appeared to be a plastic bag which he handed to appellant. Busby got out of the Mazda and back into Ladd's car. Busby told Ladd that the PCP was melting and that appellant wanted to take it back and put it into the refrigerator to solidify it.

Ladd and Busby then went to Columbia where Ladd purchased an ice chest and some ice. They then returned to Italian Bar Road 1.3 miles out of Columbia where Busby told Ladd to park in front of a leather shop and to wait for him. Busby promised to bring the drug when he returned. The leather shop was at appellant's residence. Fifteen or twenty minutes later the same red Mazda came to the leather shop, driven by appellant's

---

[2]The fact that this meeting took place in Stanislaus County has significance on the jurisdiction issue.

wife, Mrs. Lynda Tabucchi, with Busby as a passenger. Busby got out of the Mazda and into Ladd's car, and gave Ladd a plastic bag that contained three separate packets of PCP. The two cars then drove to the Round Table Pizza Parlor in Sonora. On the way Busby told Ladd that Mrs. Tabucchi would be following them to Sonora and would be paid the money there.

At the pizza parlor, Agent Wright got into the back seat of Ladd's car and gave Busby $3,500. Busby took $450 of the money and placed it in his pocket. At that time, about 3:30 p.m., Busby and Mrs. Tabucchi were arrested. Appellant was subsequently arrested at his residence.

## LOCAL JURISDICTION

■ Appellant's contention that since the sale of PCP occurred in Tuolumne County the Superior Court of Stanislaus County lacked territorial jurisdiction to try him on the charge is without merit.[3]

Penal Code section 781 states:

"When a public offense is committed in part in one jurisdictional territory and in part in another, or the acts or effects thereof constituting or requisite to the consummation of the offense occur in two or more jurisdictional territories, the jurisdiction of such offense is in any competent court within either jurisdictional territory."

Under this section the county in which the "preliminary arrangements" for the crime are made is a proper county in which to prosecute the completed offenses, even though the acts performed in such county do not constitute an essential element of the crime. (*People* v. *Powell* (1967) 67 Cal.2d 32, 62 [59 Cal.Rptr. 817, 429 P.2d 137]; *People* v. *Abbott* (1956) 47 Cal.2d 362, 370 [303 P.2d 730]; Witkin, Cal. Criminal Procedure, Jurisdiction and Venue, § 70, pp. 67-68.)

In the present case, although the actual sale of the PCP took place in Tuolumne County, there is ample evidence that the preliminary arrangements and negotiations for the sale took place in Stanislaus County. Officer Ladd first met appellant's cohort Busby in Oakdale (Stanislaus

---

[3]No contention is made that the court lacked "subject matter" jurisdiction. The crime charged is a felony and it occurred within California. (See Witkin, Cal. Criminal Procedure, Jurisdiction and Venue, § 24, pp. 28-29.)

County) on July 6, 1975, where the original offer to sell was made by Busby at his apartment. On July 7, 1975, Ladd and Busby met at a park in Oakdale where terms of the sale were negotiated. Thereafter, at the intersection of Highway 120 and 26 Mile Road in Stanislaus County Busby was observed meeting with appellant and an unidentified third party.

Determining venue or jurisdiction in a criminal case is a question of fact. (*People* v. *Mitten* (1974) 37 Cal.App.3d 879, 881 [112 Cal.Rptr. 713].) Where there is some evidence to support the magistrate's decision on this question at the preliminary hearing, neither the superior court nor the Court of Appeal is permitted to inquire into its sufficiency. (*People* v. *Mitten, supra,* 37 Cal.App.3d at pp. 881-882.) In addition, circumstantial evidence is sufficient to establish venue or jurisdiction (*People* v. *Arline* (1970) 13 Cal.App.3d 200, 203 [91 Cal.Rptr. 520]), and venue or jurisdiction need not be proved beyond a reasonable doubt but only by a preponderance of the evidence. (*People* v. *Arline, supra,* 13 Cal.App.3d at p. 203.)

Because of appellant's presence at the meeting with Busby at the intersection of Highway 120 and 26 Mile Road on July 7, 1975, there is sufficient circumstantial evidence of his involvement in the preliminary arrangements for the sale in Stanislaus County to uphold the magistrate's determination that Stanislaus County had jurisdiction. A reasonable inference arises that appellant agreed in Stanislaus County to sell the PCP to Ladd in Tuolumne County. (See also *People* v. *Williams* (1973) 36 Cal.App.3d 262, 268-269 [111 Cal.Rptr. 378]; *People* v. *Flowers* (1962) 202 Cal.App.2d 311, 312-313 [20 Cal.Rptr. 778]; cf. *People* v. *Gonzalez* (1960) 180 Cal.App.2d 285 [4 Cal.Rptr. 822].)

Finally, we observe that although subject-matter jurisdiction cannot be conferred on a court by consent of the parties, territorial jurisdiction can be so conferred. By pleading guilty to the sale which was alleged to have occurred in Stanislaus County, appellant must be deemed to have admitted every essential element of the crime charged including the jurisdictional allegations of the county in which the crime occurred. (*People* v. *Marr* (1941) 46 Cal.App.2d 42, 43 (hg. den.) [115 P.2d 206].)

## FAILURE TO ADVISE APPELLANT OF THE
## DIRECT CONSEQUENCES OF HIS PLEA

■ While appellant has framed his contention that he was not fully advised of the direct consequences of his plea in the context of ineffective representation by his counsel, Mr. La Force, it is clear that the trial court also was under a duty to see that appellant fully understood and appreciated the consequences of his plea. (*In re Tahl* (1969) 1 Cal.3d 122, 133, fn. 7 [81 Cal.Rptr. 577, 460 P.2d 449]; *People* v. *Rizer* (1971) 5 Cal.3d 35, 38 [95 Cal.Rptr. 23, 484 P.2d 1367].) The record shows that the trial court failed to advise appellant that if he should be sentenced to state prison he would not be eligible for release or parole until he served a minimum of three years as expressly provided by Health and Safety Code section 11379.[4]

A plea of guilty cannot stand unless the record indicates a free and intelligent waiver by the defendant of the three constitutional rights specified in *Boykin* v. *Alabama* (1969) 395 U.S. 238 [23 L.Ed.2d 274, 89 S.Ct. 1709], which are necessarily abandoned by the guilty plea, and indicates so far as the defendant is concerned an understanding of "the nature of the charge and the consequences of his plea." (*In re Tahl, supra,* 1 Cal.3d at p. 132.) Mere inferences however plausibly drawn from the record, indicating that the defendant may have understood his rights and the consequences of his plea, are insufficient. (*People* v. *Rizer, supra,* 5 Cal.3d at p. 38.)

To establish that the defendant fully understands the consequences of his plea, the trial court must satisfy itself that the defendant knows about the permissible range of sentences to which he subjects himself by pleading guilty. (*In re Tahl, supra,* 1 Cal.3d at p. 133, fn. 7.) Indeed, in *Bunnell* v. *Superior Court* (1975) 13 Cal.3d 592, 605 [119 Cal.Rptr. 302, 531 P.2d 1086], it is stated: "In all guilty plea . . . cases the defendant shall be advised of the direct consequences of conviction such as the *permissible range of punishment provided by statute . . .*" (Italics added.)

The question is thus presented: was notice to appellant of the statutorily required three-year minimum term for parole eligibility as

[4]Health and Safety Code section 11379, subdivision (a), provides in pertinent part: ". . . , every person who . . . sells, . . . any controlled substance . . . , shall be punished by imprisonment in the state prison for a period of five years to life and shall not be eligible for release upon completion of sentence or on parole or any other basis until he has been imprisoned for a period of not less than three years."

provided in section 11379, essential to his understanding of the punishment which he would receive by pleading guilty? If so, such notice was a constitutional requisite to the entry of his plea of guilty.

Recognizing the critical importance to a defendant of the right to parole and recognizing the widespread knowledge of persons charged with crime concerning the "one-third minimum time" parole policy of the Adult Authority in usual cases (see Cal. Pen. Code, § 3049), we believe that notice to a defendant of any *statutorily required* minimum term for parole eligibility (such as contained in Health & Saf. Code, § 11379) contrary to and of greater duration than the usual Adult Authority policy based on Penal Code section 3049, is constitutionally required as a prerequisite to entry of a guilty plea under the rationale of *In re Tahl, supra.* Such a minimum term for parole eligibility must be deemed a direct rather than a collateral consequence of the guilty plea. (Cf. *People* v. *Searcie* (1974) 37 Cal.App.3d 204 [112 Cal.Rptr. 267]; *People* v. *Flores* (1974) 38 Cal.App.3d 484 [113 Cal.Rptr. 272].)

■ Apart from the constitutional defect in the taking of the plea, it is apparent that the trial court abused its discretion under Penal Code section 1018 in refusing to allow appellant to withdraw his plea.

In determining whether a trial court has abused its discretion in denying a prejudgment motion to withdraw a guilty plea under Penal Code section 1018, the test is whether after a consideration of all of the relevant factors, good cause has been shown and whether justice would be furthered by granting the motion. (*People* v. *Superior Court (Giron)* (1974) 11 Cal.3d 793, 798 [114 Cal.Rptr. 596, 523 P.2d 636].) Generally, a plea of guilty may be withdrawn for mistake, ignorance, inadvertence or any other factor overriding a defendant's free and clear judgment providing the good cause is shown by clear and convincing evidence. (*People* v. *Cruz* (1974) 12 Cal.3d 562, 566 [116 Cal.Rptr. 242, 526 P.2d 250].)

Here, appellant advised the court that when he entered his plea he was under the impression that he would be eligible for parole after having served one-third of the minimum term of five years or twenty months. Nothing in the record by inference contradicts this assertion of fact. Since it has been a matter of common knowledge for many years that in the usual case, assuming good behavior in prison, a defendant will be eligible for parole after serving one-third of the minimum term of punishment, appellant's assertion that he was under such an impression when he entered his plea is plausible on its face.

Trial courts are required to give a liberal construction to the provisions of Penal Code section 1018 in the interests of promoting justice. (*People* v. *Superior Court (Giron), supra,* 11 Cal.3d at pp. 796-797.) Because the record does not reflect that appellant was told that he would have to serve three years in state prison before he was eligible for parole, but to the contrary shows that he entered his plea on the mistaken belief that he would be eligible for parole in twenty months, appellant has sustained his burden of showing good cause. Thus, we have no alternative but to hold that the trial court abused its discretion in not allowing appellant to withdraw his plea of guilty.

The judgment of conviction is reversed; the matter is remanded to the trial court with directions to allow appellant to withdraw his plea of guilty to the crime charged in count II of the information and to reinstate the original charges as permitted by law.

Brown (G. A.), P. J., and Thompson, J.,* concurred.

On November 29, 1976, the opinion was modified to read as printed above.

---

*Retired superior court judge sitting under assignment by the Chairman of the Judicial Council.