[No. A019073. First Dist., Div. Four. Sept. 5, 1984.]

THE PEOPLE, Plaintiff and Respondent, v.
JUAN FRANCISCO LOERA, Defendant and Appellant.

**[Opinion certified for partial publication.*]**

---

*Pursuant to rules 976 and 976.1, California Rules of Court, this opinion is certified for publication except for part III.

**COUNSEL**

Lyle W. Johnson, under appointment by the Court of Appeal, and McNamee, Allen & Johnson for Defendant and Appellant.

John K. Van de Kamp, Attorney General, Ann K. Jensen and Herbert F. Wilkinson, Deputy Attorneys General, for Plaintiff and Respondent.

**OPINION**

**TRAVIS, J.***—Pursuant to a negotiated disposition, defendant Juan Francisco Loera entered pleas of guilty to single counts of taking and driving a vehicle without the owner's consent (Veh. Code, § 10851), possessing a controlled substance (Health & Saf. Code, § 11377), and receiving stolen property (Pen. Code, § 496),[1] which he admitted had a value in excess of $25,000 (§ 12022.6, subd. (a)). Defendant appeals from the judgment of conviction which ensued, contending (1) that the trial court erred in enhancing the principal term of his sentence pursuant to section 12022.6, and (2) that the trial court abused its discretion by not striking that enhancement on its own motion. We find these contentions to be without merit and will therefore affirm the judgment.

I

The judgment of conviction based upon defendant's pleas of guilty represents the culmination of five separate criminal actions against defendant. In the interests of clarity and a complete understanding of what happened in the trial court, it is necessary to review the full panoply of the criminal proceedings pending against defendant at the time he entered his pleas of guilty.

In action No. 77351, defendant was charged by information with taking and driving a vehicle without the owner's consent (Veh. Code, § 10851); driving that vehicle "in wilful and wanton disregard for the safety of persons and property" (*id.*, § 23103); resisting a public officer in the discharge of a duty of his office (§ 148); and failing to stop after being involved in an automobile accident (Veh. Code, § 20002), the last three offenses being charged as misdemeanors. Defendant entered pleas of not guilty to these charges.

---

*Assigned by the Chairperson of the Judicial Council.

[1]Statutory references are to the Penal Code unless otherwise indicated.

In action No. 79319, defendant was charged by information with possession of "a controlled substance, to wit: Phencyclidine," in violation of Health and Safety Code section 11377. Defendant also entered a plea of not guilty to this charge.

In action No. 82376, defendant was charged by information with one count of burglary (§ 459); one count of grand theft (§§ 484, 487); three counts of taking and driving a vehicle without the owner's consent (Veh. Code, § 10851); one count of forgery (§ 470); two counts of receiving stolen property (§ 496), both of which included an allegation that during the commission of the offense defendant "took, destroyed or damaged" property whose loss was in excess of $25,000 (§ 12022.6, subd. (a)); one count of failing to stop after being involved in an automobile accident (Veh. Code, § 20002), and one count of resisting a public officer in the discharge of a duty of his office (§ 148), the last two offenses being charged as misdemeanors.[2]

In action No. 78429, defendant was charged by information with burglary (§ 459). Finally, defendant was charged by a criminal complaint filed in the municipal court (docket No. C8264763) with two counts of having committed an assault with a deadly weapon or instrument (§ 245) and one count of mayhem (§ 203).[3]

It therefore appears that as of February 1982 defendant was facing possible trial in five criminal actions on fourteen felonies and five misdemeanors. Defendant was also the subject of criminal proceedings in yet another criminal action which is not pertinent to this appeal.[4]

At a hearing conducted on February 23, 1982, the trial court outlined the terms of a negotiated disposition as follows:

"THE COURT: This matter involves four docket numbers: 77351, 78429, 79319, which are all Superior Court cases that were sent to this department

---

[2]As will appear, at the time defendant entered his pleas of guilty no preliminary examination had been conducted in this matter, which the trial court referred to by its municipal court docket number (No. C8266872). It may be inferred from the probation officer's report prepared after defendant pleaded guilty that an information was subsequently filed in this matter, which was thereupon designated as action No. 82376.

A copy of this information is not in the record. The information recited in this text is taken from the report of the probation officer.

[3]Neither the information in action No. 78429 nor the criminal complaint in the municipal court action was included in the record. The information recited above is likewise taken from the probation officer's report.

[4]It further appears from the probation officer's report that another criminal complaint had been filed in municipal court (docket No. C8266064) in which defendant was charged with using a controlled substance. (Health & Saf. Code, § 11550.)

for trial. In addition thereto, we have a case bearing a Municipal Court docket number C8266872 [action No. 82376], which has a complaint which has been filed, and it's my understanding, in order to accommodate everyone, what we're going to do today, you will stipulate that in the Municipal Court matter I may sit as a magistrate and arraign Mr. Loera, take the preliminary waiver and also take his plea. Is that correct?

"MR. JOHNSON: That's correct, your Honor.

"MR. SCHORI: So stipulated, your Honor.

"THE COURT: All right. And this is the disposition in the case: Mr. Loera will plead guilty to the Municipal Court complaint, and that will be Count 3, which is a violation of Penal Code Section 496; in addition thereto, he will admit the excessive taking or damage or destruction clause, which will mean an additional year. This case will be the principal term. So, he will have a four-year term imposed for this.

"Then he will plead guilty to Count 1 in Information number 77351, which is a violation of Vehicle Code Section 10851, and that will run consecutive. So, it will be four years and eight months. Then he will plead guilty to Count 1, a violation of Health and Safety Code Section 11377A in Information number 79319, and an additional eight months will be imposed consecutive, for a total term of five years and four months in state prison.

"Once he does that, the district attorney will dismiss all the remaining counts and, in addition thereto, will dismiss in total Information number 78429. Now, was that the disposition?

"MR. SCHORI: That's correct, your Honor. Steven Schori, Deputy District Attorney, appearing for the People. . . .

"THE COURT: . . . Was that your understanding of the disposition, Mr. Johnson?

"MR. JOHNSON: Yes, it is, your Honor.

"THE COURT: And Mr. Loera, is that your understanding?

"THE DEFENDANT: Yes."

The trial court thereupon arraigned defendant on municipal court docket No. C8266872; advised him of his rights and the consequences of guilty

pleas with regard to all actions; accepted his pleas of guilty[5] and his admission of the section 12022.6 enhancement in accordance with the negotiated disposition; accepted the parties' stipulations that defendant's pleas and his admission of the enhancement were supported by a factual basis; and set a date for sentencing.

On April 23, 1982, the trial court sentenced defendant to state prison for a term of two years on count three of action No. 82376, with an additional term of one year for the enhancement pursuant to section 12022.6, subdivision (a), and consecutive eight-month terms for count one of action No. 77351 and count one of action No. 79319, for a total aggregate sentence of four years and four months. On motion of the prosecutor and in conformity with the negotiated disposition, the remaining charges against defendant were then ordered dismissed.

Defendant filed a notice of appeal in which he stated that his appeal from the judgment was based solely on grounds occurring after entry of his pleas of guilty.[6] (Cal. Rules of Court, rule 31(d).)

REVIEW

II

Both of defendant's contentions on this appeal relate to the propriety of the trial court's imposition of the one-year enhancement term pursuant to section 12022.6, subdivision (a). ■ His first contention, which is comprised of imprecisely framed and occasionally contradictory arguments, is a general claim that this statute cannot be used to enhance a sentence for receiving stolen property. We will examine the history, language, and purpose of section 12022.6 and conclude that this contention must be rejected.

As previously recited, defendant admitted the enhancement allegation as part of the negotiated disposition. In addition, he made no objection when he was sentenced in accordance with section 12022.6, subdivision (a). We were therefore concerned as to whether defendant may have waived his right to challenge the sentence. ■ It is apparent from defendant's brief, how-

---

[5]Defendant actually entered a plea of "no contest" to count one of action No. 77351 (Veh. Code, § 10851), even though, as pointed out by the trial court at that time, this plea has the same legal effect as a plea of guilty. (§ 1016; *People* v. *Hughes* (1980) 112 Cal.App.3d 452, 460 [169 Cal.Rptr. 364].)

[6]Defendant's notice of appeal filed on June 29, 1982, was untimely because it was not filed within 60 days after the judgment was entered on April 23, 1982. (Cal. Rules of Court, rule 2(a).) This court, however, granted defendant's motion for relief from his default and delay in filing his notice.

ever, that he is in effect contending that the sentence imposed was unlawful. The imposition of a sentence which is unlawful, and consequently void, is a jurisdictional defect subject to correction whenever it comes to the attention of either a trial court or a reviewing court. (See *People* v. *Serrato* (1973) 9 Cal.3d 753, 763 [109 Cal.Rptr. 65, 512 P.2d 289]; *Wilson* v. *Superior Court* (1980) 108 Cal.App.3d 816, 818-819 [166 Cal.Rptr. 795]; *People* v. *Walling* (1980) 105 Cal.App.3d 893, 896 [164 Cal.Rptr. 681]; see also *People* v. *Crowson* (1983) 33 Cal.3d 623, 627, fn. 3 [190 Cal.Rptr. 165, 660 P.2d 389].) We therefore conclude that defendant is not precluded from pressing his contention by virtue of his admission and previous inaction, or by his failure to secure a certificate of probable cause ordinarily required by section 1237.5. (*People* v. *Ward* (1967) 66 Cal.2d 571, 574 [58 Cal.Rptr. 313, 426 P.2d 881]; *People* v. *Pinon* (1979) 96 Cal.App.3d 904, 910 [158 Cal.Rptr. 425].)

Section 12022.6 was added to the Penal Code as part of the 1976 enactment commonly known as the determinate sentencing law. (Stats. 1976, ch. 1139, § 305.5, p. 5162.) In its original version, the statute provided for enhancement of the sentence imposed for any felony except robbery, arson, or burglary, if the elements of the offense involved "A taking or damage" of funds or property in excess of either $100,000 or $500,000, with the length of the enhancement term to be fixed in relation to a specified percentage of "the base term selected by the [trial] judge."[7] (See Cassou & Taugher, *Determinate Sentencing in California: The New Numbers Game* (1978) 9 Pacific L.J. 5, 44.) Section 12022.6 was amended the following year by an enactment (Stats. 1977, ch. 165, § 93, p. 679) which made significant modifications in the scope and effect in the statute. In the words of two leading commentators, the amendatory enactment "greatly expanded the enhancement's applicability and simplified its calculation. The enhancement became applicable to any felony; the numerical triggers were . . .

---

[7]As originally enacted, section 12022.6 provided in pertinent part: "Where the elements of any felony, excepting robbery as defined in Section 211, arson, as defined in Section 447a, 448a, 449a, 449b, or 449c, and burglary as defined in Section 459, involve any criminal taking of funds or property from or property damage to any individual, organization, group or the community in general, and either do not specify a minimum value of the taking or damage, or specify a minimum of less than one hundred thousand dollars ($100,000), in any such case where the specific circumstances involve:

"(a) A taking or damage in excess of one hundred thousand dollars ($100,000), but less than five hundred thousand dollars ($500,000) such facts may be charged in the indictment or information and if found to be true by the jury upon a jury trial, or if found to be true by the court upon a court trial, or if admitted by the defendant, shall be punished by an additional term of imprisonment of one-half the base term selected by the judge.

"(b) A taking or damage equal to or greater than five hundred thousand dollars ($500,000), such facts may be charged in the indictment or information and if found to be true by the jury upon jury trial, or if found to be true by the court upon court trial, or if admitted by the defendant, shall be punished by an additional term of imprisonment equivalent to the base term selected by the trial judge."

[reduced] . . . ; and the penalty itself became one or two years." (Cassou & Taugher, *op. cit. supra,* at p. 45.)

 As amended, and as relevant here, section 12022.6 reads in pertinent part: "Any person who takes, damages or destroys any property in the commission or attempted commission of a felony, with the intent to cause such taking, damage or destruction, and the loss exceeds: [¶] (a) Twenty-five thousand dollars ($25,000), the court shall in addition and consecutive to the punishment prescribed for the felony or attempted felony of which the defendant has been convicted impose an additional term of one year."

The emphasis of defendant's argument is on the application and meaning of the statute's "takes, damages or destroys" language. It has been held that "In enacting section 12022.6, the Legislature did not intend that a taking was to be a necessary element of the underlying crime in order to impose the enhancement." (*People* v. *Kellett* (1982) 134 Cal.App.3d 949, 958 [185 Cal.Rptr. 1].) We are unable to fathom upon what basis defendant first acknowledges this construction of section 12022.6 and then ignores it when he argues that the enhancement imposed upon him pursuant to that statute is invalid because "[i]n this case the stolen property was neither damaged nor destroyed in an amount of $25,000 or more . . . [and] . . . there was no taking because [defendant] received the stolen property." Defendant's argument proceeds as follows: "Receipt of stolen property is considerably different than the requisite taking for . . . section 12022.6. . . . The connotation with receiving is clearly that the recipient obtains possession by permissive means. This is contra to the connotation with taking which is that possession is obtained by non-permissive means," thereby excluding the crime of receiving stolen property from the offenses to which section 12022.6 is applicable. This construction of section 12022.6 is untenable.

We first deal with defendant's statement that "the stolen property was neither damaged nor destroyed in an amount of $25,000 or more." It appears from the probation officer's report that the property stolen consisted of three trucks loaded with goods, and that the goods alone had a value of $73,734. It fairly appears from that same source that defendant was arrested while attempting to move some of the stolen goods from a place where they had previously been secreted. Defendant at the time of his arrest was driving a rented truck containing part of the stolen goods, which the probation officer stated to have "a total value in excess of $25,000." It is of no consequence that most of the stolen property was eventually recovered and

that the owner's ultimate uninsured loss was less than $25,000; section 12022.6 is applicable "without regard for the duration of the dispossession" (*People* v. *Kellett, supra,* 134 Cal.App.3d at p. 960; see *People* v. *Bates* (1980) 113 Cal.App.3d 481, 483-484 [169 Cal.Rptr. 853]) or for "the victim's ultimate out-of-pocket loss." (See *People* v. *Ramirez* (1980) 109 Cal.App.3d 529, 539 [167 Cal.Rptr. 174].) For purposes of this discussion, the operative facts are that property was stolen and that at the time it was stolen the loss was in excess of $25,000.

■ Defendant's argument that he did not personally "take" the property is an attempt to invoke the "fundamental principle that one may not be convicted of stealing and of receiving the same property." (*People* v. *Jaramillo* (1976) 16 Cal.3d 752, 757 [129 Cal.Rptr. 306, 548 P.2d 706]; *People* v. *Jackson* (1978) 78 Cal.App.3d 533, 538 [144 Cal.Rptr. 199]; *People* v. *Swinney* (1975) 46 Cal.App.3d 332, 337 [120 Cal.Rptr. 148], disapproved on other grounds in *People* v. *Zamora* (1976) 18 Cal.3d 538, 564-565, fn. 26 [134 Cal.Rptr. 784, 557 P.2d 75].) This principle is a general rule which is subject to a number of exceptions. "For example, when there is evidence of complete divorcement between the theft and a subsequent receiving, such as when the thief has disposed of the property and subsequently receives it back in a transaction separate from the original theft, convictions on both charges would be proper." (*People* v. *Jaramillo, supra,* at p. 759, fn. 8; *People* v. *Garcia* (1981) 121 Cal.App.3d 239, 247, fn. 4 [175 Cal.Rptr. 296].) In addition, in situations where "the thief commits an initial act of concealment and then, at a later time, indulges in new acts of concealment entirely separate from the theft, he may be prosecuted for the later concealment." (*People* v. *Swinney, supra,* 46 Cal.App.3d at p. 337; *People* v. *Wheeldin* (1969) 276 Cal.App.2d 744, 747 [81 Cal.Rptr. 270].) The theft of property and the receiving of that property are complementary aspects of a single criminal dispossession of property. The circumstances of defendant's arrest support an inference that he was engaging in a second act of concealing the stolen property, thereby removing this case from the ambit of the "fundamental principle that one may not be convicted of stealing and of receiving the same property." (See *People* v. *Jaramillo, supra,* 16 Cal.3d at pp. 757, 759, fn. 8; *People* v. *Swinney, supra; People* v. *Wheeldin, supra.*) There is consequently no inflexible impediment to defendant's sentence for receiving stolen property being enhanced by virtue of the initial "taking" for which he was not convicted.

The distinction drawn by defendant between possession obtained by "permissive" as opposed to "nonpermissive" means is an argument "reminiscent of the hypertechnicality of the common law of theft" (*People* v. *Ramirez, supra,* 109 Cal.App.3d 529 at p. 540) which we find unpersuasive.

Defendant is obviously attempting to introduce the "taking" element of common law theft, which had a distinct if imprecise meaning. (See Perkins on Criminal Law (3d ed. 1982) ch. 4, § 1C, pp. 302-303.) ■■■ For purposes of section 12022.6, it is irrelevant that defendant may not have been the thief who did the actual "taking," regardless of whether it was accomplished by "permissive" or "nonpermissive" means. "The Legislature was not concerned with the crime committed by a defendant so long as property valued in excess of $25,000 was taken. [¶] Moreover, the clear language of the statute . . . . does not on its face require the intent to permanently deprive the owner of property, but rather that the property be intentionally rather than accidentally taken." (*People* v. *Kellett, supra,* 134 Cal.App.3d 949 at pp. 958-959.) Defendant does not dispute that property was in fact intentionally taken.

Clearly, the acquisition of stolen property by a person other than the thief is not permissive from the standpoint of the property's rightful owner. As far as he is concerned, this is a separate yet still unauthorized "taking" unconnected with the initial deprivation of possession. This is recognized in the language of the receiving statute, which applies to "[e]very person who buys or receives . . . or who conceals, sells, withholds or aids in concealing, selling, or withholding" stolen property. (§ 496, subd. 1.) The law thus recognizes that a violation of section 496 may involve various forms and acts of "taking." (See *Williams* v. *Superior Court* (1978) 81 Cal.App.3d 330, 343-344 [146 Cal.Rptr. 311]; Fricke & Alarcon, Cal. Criminal Law (8th ed. 1961) p. 323.) In determining the meaning of the word "take" as used in section 12022.6, we follow the rule that "[c]ourts should first look to the plain dictionary meaning of the [word] . . . ." (*Rosenfield* v. *Superior Court* (1983) 143 Cal.App.3d 198, 202 [191 Cal.Rptr. 611].) With regard to section 12022.6, this has already been done: "The dictionary definition of 'take' is 'to get into one's hands or into one's possession . . . .' (Webster's Third New Internat. Dict. (1961) p. 2329.)'" (*People* v. *Kellett, supra,* 134 Cal.App.3d 949 at p. 959.) It would be a tortured definition of the word to hold that stolen property passing through hands increasingly distant and removed from those of the owner somehow can no longer be identified as taken. Because the Legislature was not concerned with the specific crime committed by which possession was obtained (see *People* v. *Kellett, supra,* at p. 958), we decline to adopt such a definition and thereby limit section 12022.6 to crimes which must include the "taking" element of common law theft.

This court is required to construe section 12022.6 in a manner which will best effectuate the intent of the Legislature. (See *Landrum* v. *Superior Court*

(1981) 30 Cal.3d 1, 12 [177 Cal.Rptr. 325, 634 P.2d 352]; *People* v. *Shirokow* (1980) 26 Cal.3d 301, 306-307 [162 Cal.Rptr. 30, 605 P.2d 859]; *Rosenfield* v. *Superior Court, supra,* 143 Cal.App.3d 198 at p. 202; *People* v. *Veasey* (1979) 98 Cal.App.3d 779, 790 [159 Cal.Rptr. 775].) The courts of this state have uniformly held that the Legislature's intent in enacting section 12022.6 was to deter large-scale crime. (See *People* v. *Kellett, supra,* 134 Cal.App.3d 949 at p. 959; *People* v. *Hughes, supra,* 112 Cal.App.3d 452 at p. 459; *People* v. *Ramirez, supra,* 109 Cal.App.3d 529 at p. 539.) This goal will be especially effectuated in situations where the usual sanctions of section 496 will be compounded with an additional term of imprisonment imposed pursuant to section 12022.6. Section 496 is aimed at a class of criminals who by their parasitic nature foment crime by others. "[I]t is directed at the traditional 'fence' and at those who lurk in the background of criminal ways in order to provide the thieves with a market or depository for their loot. [¶] . . . Experience has shown that by cutting off the 'fence' a major obstacle is placed in the path of encouraging thefts as a profitable venture. . . . [I]n the eyes of the law the 'fence' is more dangerous and detrimental to society than is the thief . . . ." (*People* v. *Tatum* (1962) 209 Cal.App.2d 179, 183-184 [25 Cal.Rptr. 832]; *People* v. *Jaramillo, supra,* 16 Cal.3d 752 at p. 758; *People* v. *Jackson, supra,* 78 Cal.App.3d 533 at p. 538; see Perkins on Criminal Law, *op. cit. supra,* ch. 4, § 6, p. 394.)

The essence of defendant's argument is that the "taking" language used in section 12022.6 is synonymous with "stealing." In *People* v. *Superior Court (Kizer)* (1984) 155 Cal.App.3d 932 [204 Cal.Rptr. 179], we rejected a substantially similar argument. We stated: " 'Steal' is but one meaning of the word 'take.' (See Webster's Third Internat. Dict.) Where a word of common usage has more than one meaning, the one which will best attain the purpose of the Legislature should be adopted in construing a statute. (*People* v. *Hacker Emporium, Inc.* (1971) 15 Cal.App.3d 474, 478-480 [93 Cal.Rptr. 132].) To construe the word 'takes' in section 12022.6 as meaning 'steals' is to give it a restricted meaning which is inconsistent with the legislative intent of deterring large-scale crime, the legislative goal in enacting the statute. [Citation.] The purpose of the statute is clearly served by imposing the enhancement upon the receiver of stolen property." (At p. 935.) Defendant has advanced no compelling reason why we should depart from our holding in *Kizer.*

We conclude that in light of law, logic, experience, and legislative purpose, it is appropriate to permit the application of section 12022.6 to enhance a sentence for receiving stolen property. The trial court therefore did not err when it imposed the additional term of imprisonment. Defendant's contention that the sentence was unlawful consequently fails.

## III*

. . . . . . . . . . . . . . . . . . . . . . . .

The judgment of conviction is affirmed.

Poché, Acting P. J., and Panelli, J., concurred.

---

*See footnote, *ante,* page 992.