Filed 4/21/23  P. v. McFadden CA4/1

# NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b). This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## COURT OF APPEAL, FOURTH APPELLATE DISTRICT

## DIVISION ONE

## STATE OF CALIFORNIA

| | |
|---|---|
| THE PEOPLE, | D080325 |
| Plaintiff and Respondent, | |
| v. | (Super. Ct. No. SCD290150) |
| TRAYVON MOORE MCFADDEN, | |
| Defendant and Appellant. | |

APPEAL from a judgment of the Superior Court of San Diego County, Melinda J. Lasater, Judge. Affirmed.

Lizabeth Weis, under appointment by the Court of Appeals, for Defendant and Appellant

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Charles C. Ragland, Assistant Attorney General, Steve Oetting and Daniel J. Hilton, Deputy Attorneys General, for Plaintiff and Respondent.

A jury convicted Trayvon Moore McFadden of felony assault with force likely to produce great bodily injury and causing great bodily injury to

Nabeel Y. Before sentencing, McFadden made a *Romero*[1] request that the trial court strike four out of five of his prior serious felony convictions for residential burglary. The trial court denied the *Romero* request and ultimately imposed a sentence of 25 years to life for the assault and an additional 3 years for the great bodily injury enhancement. On appeal, McFadden argues that the trial court abused its discretion by considering improper factors in its ruling on the *Romero* motion, thereby violating his due process rights.

We conclude that the trial court did not rely on any information beyond what is permissible in the context of sentencing. The trial court did not consider improper factors or violate McFadden's due process rights by denying his *Romero* motion. Accordingly, we affirm the judgment.

FACTUAL AND PROCEDURAL BACKGROUND

The current offense occurred after McFadden was arrested and booked into custody in January 2020 for resisting arrest and possessing a firearm and ammunition as a convicted felon, in violation of his probation for another offense. In April 2021, McFadden was transferred to a cell with Nabeel Y. and Brandon H. in San Diego County Central Jail. Both Nabeel and Brandon had been occupying the cell for a few days before McFadden arrived. Before sharing a cell on this occasion, McFadden and Brandon had encountered one another as cellmates at George Bailey Detention Facility ("George Bailey"). At George Bailey, McFadden had complained to deputies that he wanted Brandon out of their cell. As a result of McFadden's request, an altercation between Brandon and custodial personnel ensued that led to Brandon being placed in an administrative segregation unit for two or three weeks.

---

[1] *People v. Superior Court* (*Romero*) (1996) 13 Cal.4th 497.

2

As soon as McFadden moved in with Nabeel and Brandon at the San Diego County Central Jail, he immediately cleaned the floor and toilet, attempting to "set the tone" in terms of hygiene in the cell. Over the course of three days, McFadden grew increasingly irritated by a perceived lack of cleanliness in the cell, particularly with the body odor of Nabeel. The assault in question occurred after McFadden woke up from a brief nap on the night of his third day in the cell. When McFadden awoke from his nap, he accused Nabeel of failing to clean himself properly and told him to take a shower, leading to a heated argument.

According to Brandon, McFadden threw the first punch, hitting Nabeel in the face or ribs. McFadden continued to strike Nabeel in the face and chest until Nabeel got hold of a shampoo bottle and managed to fling some shampoo into one of McFadden's eyes. At this point McFadden "hit [Nabeel] a couple more times" until Deputy Breslow arrived at the cell to respond to the commotion.

Upon arriving at the cell, Deputy Breslow saw McFadden punch Nabeel's torso. Deputy Breslow ordered them to stop fighting and move to opposite sides of the cell; both McFadden and Nabeel complied with his commands. McFadden and Nabeel were removed from the cell and evaluated by nurses at the jail. Nabeel's medical condition was deemed critical by the jail's medical staff and he was sent via ambulance to the emergency room.

At the emergency room, a CAT scan of Nabeel's face "revealed he had jaw fractures on each side of his jaw." An attending physician determined that Nabeel needed surgery to repair one of these fractures. Surgeons then inserted a plate into Nabeel's jaw in an operation that took "[a]pproximately two and a half [or] three hours." Nabeel's recovery required him to

temporarily switch to a liquid diet and he was prescribed opiates to manage resulting pain.

In May 2021, the District Attorney for the County of San Diego filed an information charging McFadden with one count of assault likely to produce great bodily injury (Pen. Code,[2] § 245, subd. (a)(4)) with infliction of great bodily injury upon another (§ 12022.7, subd. (a)). The information also alleged that McFadden had previously been convicted of five counts of residential burglary, which were alleged as both serious felony priors (§§ 667, subd. (a)(1), 668, 1192.7, subd. (c)) and strike priors (§§ 667, subds. (b)–(i), 1170.12, 668).

In a jury trial, the jury found McFadden guilty of assault likely to produce great bodily injury and also found that, in the commission of the assault, McFadden inflicted great bodily injury on Nabeel. Following the verdict, a separate case relating to McFadden's January 2020 arrest for firearm/ammunition possession and resisting arrest was dismissed on the basis of McFadden being found "guilty [of] other charges."

Before the sentencing hearing, McFadden filed a statement in mitigation and the prosecution filed a statement in aggravation. McFadden's statement in mitigation included a *Romero* request that the trial court exercise its discretion to strike all but one of his five prior serious felony convictions for the purposes of sentencing under the Three Strikes law. In his *Romero* request, McFadden offered numerous reasons why treating all his felony convictions as strike priors would be inconsistent with the spirit of this sentencing scheme. McFadden argued that each of his felony convictions flowed from the same case, and he otherwise had a minor and non-violent criminal history. With regard to murder charges then pending against him

---

[2] All further statutory references are to the Penal Code.

4

in another case in Los Angeles, he explained that the Los Angeles case was "not the subject of a *Harvey*[3] waiver and has not been found as an aggravant by a jury or bound over for trial by a Judge." He also argued that "[t]he present offense was committed because of an unusual circumstance, such as great provocation, which is unlikely to recur." In light of these circumstances, McFadden suggested that unmitigated application of the Three Strikes law would yield an unduly severe sentence.

The prosecution's statement in aggravation contended that granting McFadden's *Romero* motion would be inappropriate. The prosecution characterized McFadden's assault on Nabeel as "excessive, avoidable, and unwarranted." In describing McFadden's "violent propensities," the prosecution referred to the Los Angeles murder charges and argued that McFadden "admitted to detectives he shot and killed another man out of anger and jealousy." The prosecution suggested that "[w]hen considering the Defendant's character and prospects the Court need not look much further than the fact that he is now facing murder charges in LA County." Specifically, the statement in aggravation stated: "While on probation for the previously discussed five strike priors, Defendant was arrested on January 13, 2020 for possessing a gun as a convicted felon. It was later determined that this gun was used in an LA [C]ounty murder that took place on January 11, 2020. Defendant later admitted to homicide detectives that he did in fact use that gun to shoot and kill someone out of rage and jealousy." The prosecution provided no evidence to support these statements.

The probation department also filed a report in advance of sentencing. Aside from recounting McFadden's juvenile record, misdemeanor convictions, and felony residential burglary convictions, the report provided details of his

---

3    *People v. Harvey* (1979) 25 Cal.3d 754 (*Harvey*).

January 2020 arrest for possessing a firearm and ammunition as a convicted felon. Specifically, the probation report stated that McFadden tried to flee on foot from a vehicle that was pulled over for a tinted windows violation, and officers later located a handgun near where he was apprehended and taken into custody. The criminal history section of the report ended with a note specifying that "[t]he Court should also be aware that a hold was placed on the defendant on 06/01/20 by the Gardena Police Department for pending charges of PC187(a), Murder and PC29800(a)(1), Felon in Possession of a Firearm." The report recommended that probation be denied and McFadden be imprisoned "for the term of 8 years plus 25 years to life" under the Three Strikes law.

At the sentencing hearing, the trial judge first clarified that she had "read and considered the probation officer's report, as well as the statement[s in] mitigation and aggravation presented by the parties." The court then heard arguments on McFadden's *Romero* motion.

McFadden emphasized that his prior convictions led to probation because "the offense was not viewed so seriously that he needed to be sent to state prison." Ultimately, McFadden's stated position was "that sentencing him as a one-strike defendant and doubling up his principal term fits within the spirit of the three-strikes law."

The prosecution responded by pointing out that "[t]here has to be some reason for this Court to find this defendant outside of [the spirit of the Three Strikes law]," and suggested there were insufficient grounds for such a finding. Referring to the Los Angeles case, the prosecution asserted that "this defendant has since [his burglary convictions] shot and killed somebody." Immediately after the prosecution made this remark, however, the court interjected, "I can't consider that. How can I consider that?" The

6

prosecution answered by suggesting that it was proper to consider under *Romero* because it related to the defendant's "characteristics and prospects." In response to further questions from the trial court, the prosecution clarified that its position was that it was proper to consider McFadden's pending charges in Los Angeles for murder and felon in possession of a firearm only for the purpose of adjudicating the *Romero* motion.

McFadden's defense counsel disagreed with the prosecution and argued that *People v. Williams* (1998) 17 Cal.4th 148 (*Williams*), which discussed the factors a court may consider with respect to a *Romero* motion, did not permit consideration of charges that have yet to be adjudicated.

The court denied McFadden's *Romero* motion. Laying out its rationale, the court first expressed that McFadden "earned those four burglary convictions, he had a great opportunity there, and he did not take advantage of those opportunities, specifically the grant to probation." Next, the court found McFadden's "perspective that it was his right [or duty] . . . to get the other inmate to clean things up" problematic. After the court stated that "I just don't think he fits the *Romero* type of exception," the court added that this determination was "reinforced by the idea that he then subsequently had the firearm." The court reasoned that because McFadden ended up in custody as a direct result of the firearm possession, and the assault occurred while he was in custody after being arrested for that offense, there was a sufficient nexus to consider the firearm possession. Addressing the prosecution's invocation of McFadden's pending murder charge in Los Angeles, however, the trial judge expressed, "I am really uncomfortable using the murder case, even in this analysis, because there is no *Harvey* waiver to that."

In the end, the court sentenced McFadden to 25 years to life for the assault under the Three Strikes law, plus an additional three years for the great bodily injury enhancement, and imposed a $2,000 restitution fine.

## DISCUSSION

McFadden contends that the trial court abused its discretion in denying his *Romero* motion because its ruling was predicated on facts not in evidence. Specifically, McFadden claims that the trial court's ruling improperly relied on "the prosecution's allegations that McFadden possessed the gun that was used in the uncharged murder, that his DNA was on the gun, or that he admitted guilt in the uncharged murder." Alternatively, McFadden argues that the court improperly relied on McFadden's dismissed firearm case. McFadden asserts that the trial court's abuse of discretion amounted to prejudicial error and violated his due process rights. We disagree.

Penal Code section 1385, subdivision (a), grants trial courts discretionary authority to "strike or vacate an allegation or finding under the Three Strikes law that a defendant has previously been convicted of a serious and/or violent felony . . . 'in furtherance of justice.' " (*Williams*, *supra*, 17 Cal.4th at p. 158.) In *Williams*, the Supreme Court articulated the appropriate standard for ruling on a *Romero* motion: "[T]he court in question must consider whether, in light of the nature and circumstances of [the] present felonies and prior serious and/or violent felony convictions, and the particulars of [the defendant's] background, character, and prospects, the defendant may be deemed outside [the spirit of the three strikes sentencing scheme], in whole or in part, and hence should be treated as though he had not previously been convicted of one or more serious and/or violent felonies." (*Williams*, at p. 161.)

When a trial court elects not to exercise this power, the "trial court's decision not to strike is subject to review for abuse of discretion." (*People v. Carmony* (2004) 33 Cal.4th 367, 375 (*Carmony*).) "[A] trial court does not abuse its discretion unless its decision is so irrational or arbitrary that no reasonable person could agree with it." (*Id.* at p. 377.) Accordingly, "[a] trial court abuses its discretion when the factual findings critical to its decision find no support in the evidence." (*People v. Cluff* (2001) 87 Cal.App.4th 991, 998.) " 'The burden is on the party attacking the sentence to clearly show that the sentencing decision was irrational or arbitrary.' " (*People v. Superior Court* (*Alvarez*) (1997) 14 Cal.4th 968, 977 (*Alvarez*).)

On review, we must presume that the trial court "considered all of the relevant factors in the absence of an affirmative record to the contrary." (*People v. Myers* (1999) 69 Cal.App.4th 305, 310 (*Myers*); Cal. Rules of Court, rule 4.409 ["Relevant factors enumerated in these rules must be considered by the sentencing judge, and will be deemed to have been considered unless the record affirmatively reflects otherwise."].) Without a clear showing that its ruling on a *Romero* motion was irrational or arbitrary, the trial court is presumed " 'to have acted to achieve legitimate sentencing objectives, and its discretionary determination to impose a particular sentence will not be set aside on review.' " (*Carmony, supra*, 33 Cal.4th at pp. 376–377; *Myers*, at p. 310 ["Where the record demonstrates that the trial court balanced the relevant facts and reached an impartial decision in conformity with the spirit of the law, we shall affirm the trial court's ruling, even if we might have ruled differently in the first instance."].) Moreover, "[t]he trial court is not required to state reasons for declining to exercise its discretion under section 1385 [to strike prior felony convictions.]" (*People v. Gillispie* (1997) 60 Cal.App.4th 429, 433 (*Gillispie*).)

9

Indeed, "a trial court will only abuse its discretion in failing to strike a prior felony conviction allegation in limited circumstances." (*Carmony*, *supra*, 33 Cal.4th. at p. 378.) McFadden correctly notes that one such circumstance is "where the court considered impermissible factors in declining to dismiss." (*Ibid*.) "For example, the record may show that the court was motivated by considerations that violate the guarantee of equal protection under the law, such as bias related to the defendant's race or national origin . . . ." (*Gillispie*, *supra*, 60 Cal.App.4th at p. 434.)

We reject McFadden's argument that the trial court relied on improper factors in denying his *Romero* motion. First, nothing in the record suggests that the trial court relied on McFadden's alleged involvement in the Los Angeles murder or the fact that the gun he possessed was the one used in the Los Angeles murder. On the contrary, at the sentencing hearing, as soon as the prosecutor remarked, "this defendant has since shot and killed somebody," the trial judge immediately responded, "I can't consider that." The trial judge proceeded to ask the prosecutor why he thought she was permitted to take the uncharged murder into account, and he clarified that he felt consideration was proper under *Romero* in reference to McFadden's "characteristics and prospects." Later, when the trial judge denied the *Romero* motion, she said, "I am really uncomfortable using the murder case, even in this analysis, because there is no *Harvey* waiver to that." The trial judge made no other comments suggesting that she considered McFadden's alleged involvement in the Los Angeles murder in denying his *Romero* motion, or that she was persuaded by the prosecutor's arguments on the issue.

The trial judge made clear that she felt the uncharged murder was subject to the proposition in *Harvey* that, absent an appropriate waiver of

10

rights, a criminal defendant who accepts a plea agreement should "suffer no adverse sentencing consequences by reason of the facts underlying, and solely pertaining to, the dismissed [charges]." (*Harvey*, *supra*, 25 Cal.3d at p. 758.) Although the record does not indicate that McFadden accepted any plea agreement regarding the uncharged murder, and the *Harvey* limitation was therefore inapplicable, the trial judge's comments nevertheless affirmatively demonstrate that she believed it would have been improper to consider the uncharged murder.

McFadden has failed to point to anything in the record showing that the trial court relied on the Los Angeles murder in its denial of his *Romero* motion. McFadden merely highlights language describing the circumstances around the uncharged murder in the prosecution's statement in aggravation and the probation officer's report and suggests "the court abused its discretion as there was no support in the record to support these purported facts underlying its sentencing decision." But the mere fact that the prosecutor and the probation officer referred to the Los Angeles murder does not demonstrate that the trial court relied on it.

Because sentencing decisions are presumptively valid, including those that implement the sentencing scheme prescribed by the Three Strikes Law (*Carmony*, *supra*, 33 Cal.4th at p. 378), McFadden shoulders the burden to show that the trial court did in fact rely on improper factors (see *Alvarez*, *supra*, 14 Cal.4th at p. 977). As to the Los Angeles murder, he has failed to meet his burden.[4]

---

[4]    Although McFadden has failed to demonstrate error, we caution that potentially prejudicial facts should not be included in a statement in aggravation without any supporting evidence. "Assertions of fact in a statement in aggravation or mitigation must be disregarded unless they are supported by the record in the case, the probation officer's report or other

With regard to McFadden's dismissed firearm case, however, the record is clear that the trial court did rely on his unlawful possession of the firearm (but not on the fact that it purportedly matched the firearm used in the Los Angeles murder). As we have noted, the relevant facts surrounding the recovery of the firearm were set forth in the probation officer's report. We conclude that the trial court committed no error by relying on these facts from the probation report.

"[C]ourts routinely rely upon hearsay statements contained in probation reports to make factual findings concerning the details of the crime." (*People v. Otto* (2001) 26 Cal.4th 200, 212; *People v. Tran* (2015) 242 Cal.App.4th 877, 888, fn. 5 ["The court may also consider and rely upon hearsay statements contained in a probation report, including the police reports used to prepare the crime summaries contained in the report."].) The Penal Code and Rules of Court expressly contemplate that trial courts may consider a probation officer's report, including its discussion of aggravating and mitigating factors. (Pen. Code, § 1203, subd. (b)(4); Cal. Rules of Court, rule 4.411.5; Cal. Rules of Court, rule 4.437(d); see also *People v. Evans* (1983) 141 Cal.App.3d 1019, 1022 ["A sentencing court has wide discretion in weighing the aggravating and mitigating factors."].)

The Rules of Court do provide some relevant limitations on the trial court's consideration of facts stated in a probation report. Rule 4.411.5(a)(3) provides: "Records of an arrest or charge not leading to a conviction or the sustaining of a petition may not be included unless supported by facts

---

reports properly filed in the case, or other competent evidence." (Cal. Rules of Court, rule 4.437(d).) In this case, even if true, the prosecution's discussion of the gun used in the Los Angeles murder and McFadden's alleged confession to the murder was not supported by anything in the record, including the probation report.

concerning the arrest or charge." Rule 4.411.5(c) provides: "The source of all information must be stated. Any person who has furnished information included in the report must be identified by name or official capacity unless a reason is given for not disclosing the person's identity."

Here, in reference to the dismissed firearm case, the probation officer's report conformed to these requirements. In the criminal history section, the report provided a relatively detailed account of the facts leading to McFadden's January 2020 arrest, describing a traffic stop which escalated into a foot chase and ultimately the recovery of the handgun in the area where McFadden fled. The probation report also listed the sources of information for this criminal history section. Indeed, McFadden does not argue any violation of rule 4.411.5. Therefore, we conclude that it was proper for the trial court to consider the underlying facts pertaining to the dismissed firearms charge as described in the probation report.

Finally, even if it had been improper for the trial court to consider McFadden's 2020 firearm possession, there is no reasonable probability that the trial court would have reached a different result on his *Romero* motion. Even when a trial court takes improper factors into account in sentencing, "[a] remand for resentencing is required only where it is reasonably probable a different result would have occurred had the improper factor[s] not been considered." (*People v. Kellett* (1982) 134 Cal.App.3d 949, 962–963; *People v. Price* (1991) 1 Cal.4th 324, 492 ["When a trial court has given both proper and improper reasons for a sentence choice, a reviewing court will set aside the sentence only if it is reasonably probable that the trial court would have chosen a lesser sentence had it known that some of its reasons were improper."].)

The trial court's comments at sentencing indicate that the firearm possession was not determinative to its ruling on the *Romero* motion. The trial court explained its ruling by stating, "when I look at his history and I think that he earned those four[5] burglary convictions, he had a great opportunity there, and he did not take advantage of those opportunities, specifically the grant to probation."

The trial court was also troubled by McFadden's behavior as an inmate in jail. The court noted, "[t]he other thing is, when he testified, his perspective that it was his right, his duty, I don't know how we want to characterize it, to get the other inmate to clean things up was problematic. I think that does not bode well for him." Immediately after these remarks, the court concluded, "[s]o I just don't think that [McFadden] fits the *Romero* type of exception to the terms of striking any of the strikes." Only *after* making this determination did the court go on to say "[t]hat decision is *reinforced* by the idea that he then subsequently had the firearm." This language indicates that the trial court's ruling would have been the same even it had not considered the facts of the dismissed firearm case, because those facts merely reinforced the trial court's ruling based on other factors. Thus, we conclude that even assuming the trial court committed any error by considering McFadden's firearm possession, it would be harmless on this record.

---

5    The trial judge was referring to the four prior convictions which McFadden was asking to be stricken in his *Romero* motion (i.e., he was asking the court to be treated as a one-strike defendant).

## DISPOSITION

The judgment is affirmed.

BUCHANAN, J.

WE CONCUR:

O'ROURKE, Acting P. J.

DO, J.